JS 44  (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Estate of Michael T. Paone, Lisa Paone, Juliana Paone

## DEFENDANTS

Plymouth Township and Police Officers John Does 1-10

**(b)** County of Residence of First Listed Plaintiff   Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Montgomery
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
H. Rosen Law, P.C. Two Penn Center,
1500 JFK Blvd, Suite1723, Philadelphia, PA 19102

Attorneys *(If Known)*
Joseph J. Santarone

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | **LABOR** | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 790 Other Labor Litigation | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 791 Employee Retirement Income Security Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer    ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
42 U.S.C. § § 1983, 1985, 1986, 1988

Brief description of cause:
Excessive force caused wrongful death

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
6.2.2022

SIGNATURE OF ATTORNEY OF RECORD
*(signature)*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: **Estate of Michael T. Paone, et.al., 16 Dare Lane Pottstown, PA 19465**

Address of Defendant: **Plymouth Township 700 Belvoir Road, Plymouth Meeting, PA 19463**

Place of Accident, Incident or Transaction: Plymouth Garden Apartments, 1300 Fayette St, Conshohocken, PA 19428

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 06/02/2022   _____*Must sign here*_____   200120
*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.     Federal Question Cases:**

- ☐ 1.  Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2.  FELA
- ☐ 3.  Jones Act-Personal Injury
- ☐ 4.  Antitrust
- ☐ 5.  Patent
- ☐ 6.  Labor-Management Relations
- ☑ 7.  Civil Rights
- ☐ 8.  Habeas Corpus
- ☐ 9.  Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.     Diversity Jurisdiction Cases:**

- ☐ 1.  Insurance Contract and Other Contracts
- ☐ 2.  Airplane Personal Injury
- ☐ 3.  Assault, Defamation
- ☐ 4.  Marine Personal Injury
- ☐ 5.  Motor Vehicle Personal Injury
- ☐ 6.  Other Personal Injury *(Please specify):* _____
- ☐ 7.  Products Liability
- ☐ 8.  Products Liability – Asbestos
- ☐ 9.  All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, **Howard A. Rosen**, counsel of record *or pro se plaintiff*, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 06/02/2022   _____*Attorney-at-Law / Pro Se Plaintiff*_____   200120
*Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE ESTATE OF MICHAEL TRISTIAN PAONE, deceased, by and through the ADMINISTRATORS OF THE ESTATE**,** MICHAEL PAONE, JR. AND LISA PAONE<br>78 Greenwoods Drive<br>Horsham, PA  19044 | JURY TRIAL DEMANDED |
| | |
| AND | Civil Action No. _____ |
| | |
| LISA PAONE, individually<br>16 Dare Lane<br>Pottstown, PA 19465 | |
| | |
| AND | |
| | |
| JULIANA PAONE, individually<br>16 Dare Lane<br>Pottstown, PA 19465 | |
| | |
| *Plaintiffs,* | |
| | |
| v. | |
| | |
| PLYMOUTH TOWNSHIP<br>700 Belvoir Road<br>Plymouth Meeting, PA 19463 | |
| | |
| AND | |
| | |
| PLYMOUTH TOWNSHIP POLICE OFFICERS DOES 1 – 10, inclusive<br>700 Belvoir Road<br>Plymouth Meeting, PA 19463 | |
| | |
| *Defendants*. | |

## COMPLAINT - CIVIL ACTION

**Introduction**

Plaintiffs, the Administrators of the Estate of Michael T. Paone, Michael Paone, Jr. and Lisa Ann Paone, and Lisa Ann Paone and Juliana Paone individually, by and through undersigned counsel, bring this action against defendants Plymouth Township, including the Plymouth Township Police Department, and Plymouth Township Police Officers Does 1 through 10 inclusive, and allege as follows.

This civil rights and personal injury action seeks all damages available by law as a result of defendants violating plaintiffs' rights under the United States Constitution and state law in connection with the wrongful and fatal police shooting of the decedent, Michael Tristiane Paone, which occurred on August 3, 2021, in Plymouth Township, Montgomery County, Pennsylvania.

**Jurisdiction and Venue**

1.      This civil action is brought for the redress of alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, and rights protected by the Commonwealth of Pennsylvania.  As such, jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367.

2.      Venue is proper in this Court under 28 U.S.C. § 1391(b), because defendants reside in this district, and all incidents, events, and occurrences giving rise to this action occurred in this district.

**The Parties**

3.      Decedent Michael Tristiane Paone ("Decedent"), was a 22 year old individual, who at all times relevant up until his death on August 4, 2021, resided in an apartment (the

"Apartment") at Plymouth Gardens Apartments, 1300 Fayette Street, Conshohocken, PA. Decedent shared the Apartment with his mother and sister.

4.      Pursuant to a grant of Letters of Administration from the Montgomery County Register of Wills dated October 28 2021, Michael Paone, Jr. and Lisa Paone, Decedent's natural mother and father, were appointed Co-Administrators of the Estate of Michael T. Paone, decedent, and bring this suit in that capacity.

5.      Plaintiff Lisa Paone ("Mother") is the natural mother of Decedent and in addition to her capacity as Co-Administrator, sues in her individual capacity and seeks damages.

6.      Plaintiff Juliana Paone ("Sister") is the natural sister of Decedent and sues in her individual capacity and seeks damages.

7.      At all relevant times, defendant Plymouth Township (the "Township") is and was a duly organized public entity existing under the laws of the Commonwealth of Pennsylvania. Defendant Township created, maintained, supervised, and was responsible for the Plymouth Township Police Department.  At all relevant times, upon information and belief, the Township was the employer of Does 1 through 10, who were Township police officers, supervisorial officers, and managerial, supervisorial, and policymaking employees of the Township Police Department.  On information and belief, at all relevant times, Does 1 through 10 were residents of the Commonwealth of Pennsylvania.

8.      At all relevant times, defendants Does 1 through 10 were duly authorized employees and agents of the Township who were acting under color of law within the course and scope of their respective duties as police officers and with the complete authority and ratification of their principal, defendant Township.

9.      In doing the acts and failing and omitting to act as hereinafter described, defendants Does 1 through 10 were acting on the implied and actual permission and consent of the Township.

10.     At all relevant times mentioned herein, each and every Township defendant was the agent of each and every other Township defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every Township defendant.

11.     The true names of defendants Does 1 through 10, inclusive, are unknown to Plaintiffs, who therefore sue these defendants by such fictitious names.  Plaintiffs will seek leave to amend this complaint to show the true names and capacities of these defendants when they have been ascertained.  Each of the fictitiously-named Doe defendants is responsible in some manner for the conduct and liabilities alleged herein.

**Factual Background**

12.     As of the evening of August 3, 2021, the decedent, Michael T. Paone, was twenty-two (22) years old.  Decedent had a known history of mental illness.  He had been diagnosed with Attention Deficit Disorder as a child, and as an adult with an anxiety disorder, obsessive-compulsive disorder with recurring thought, bipolar disorder with features of schizophrenia, grandiose, delusions, and paranoia (but not schizo-affective disorder).  Decedent's symptoms caused by his mental illness were not always present, and he was often able to maintain normal social relationships whereby his mental illness was not apparent to all those who knew him.

13.     On the evening of August 3, 2021, Decedent and Sister were at the complex of the Apartment they shared with Mother.  Upon information and belief, the Apartment is one of 309

apartments in the Plymouth Gardens complex (the "Complex"). The Complex is composed of approximately a dozen two-story buildings of varying size, set in a garden-type landscape.

14.     At approximately 10:45pm on the evening of August 3, 2021, Sister left the Apartment and walked to her car that was parked in the Complex parking lot. As she neared her car, she was approached by Decedent, who appeared agitated and was exhibiting symptoms consistent with his mental illness.

15.     Shortly after their encounter in the parking lot, Sister and Decedent returned to the Apartment and Decedent became aggressive with Mother, stabbing her in the arms with a small knife, causing superficial wounds to her arms.

16.     While Decedent was being aggressive with Mother, it was obvious to Mother that Decedent was exhibiting symptoms of his mental illness.

17.     While Decedent was being aggressive with Mother, Sister left the Apartment and, starting at approximately 11:11pm, called 911 from her cell phone.

18.     Decedent ceased being aggressive with Mother shortly after Sister left the Apartment and before the police arrived. After Decedent ceased being aggressive, Mother went outside the Apartment and into the outdoors common area between multiple apartment buildings.

19.     After Decedent ceased being aggressive with Mother and before the police arrived, he walked out of the Apartment, right past Mother, as if she was not there. Decedent thereupon stood in the grassy area between two buildings in the Complex.

20.     Decedent's walking past Mother, the former target of his aggression, indicated to her that Decedent was no longer a threat to her or anyone else.

21.     Sister was inside an adjacent apartment building and spoke with 911 dispatch for more than five (5) minutes before the call was inadvertently disconnected.  Sister immediately called 911 again, again from her cell phone; this second call to 911 dispatch lasted for more than twelve (12) minutes.

22.     At approximately 11:11pm, Sister first reported to 911 that Decedent had a knife and was trying to stab Mother.

23.     At approximately 11:12pm, Sister reported to 911 that Decedent had mental health issues and had recently been at a nearby in-patient mental health facility.

24.     Decedent had been an in-patient at a hospital located within Montgomery County from July 11, 2021 through July 20, 2021.  Due to an incident with hospital staff on July 11, 2021, the Abington Township Police Department was called, arrived at the hospital, and completed an incident report, documenting that Decedent was involuntarily committed due to his mental health.  Upon information and belief, the incident report completed by the Abington Township Police Department and involving Decedent was known to, or should have been known to the Plymouth Township Police Department when Sister provided Decedent's name and/or address and/or date of birth to 911 dispatch on August 3, 2021.

25.     At approximately 11:14pm on August 3, 2021, in response to the 911 dispatch question of whether Decedent had other weapons or guns, Sister reported to 911 that Decedent did not have guns but he had a "fake toy gun".

26.     When the police arrived, Decedent was standing at the bottom of a slight incline, between two of the buildings, with his back to one of the buildings which was about twenty feet behind him.

27.     Upon information and belief, at approximately 11:15pm, police officers, including Does 1 through 3 arrived at the Complex and began to approach Decedent.

28.     Doe 1 was positioned approximately fifty feet from Decedent, on a slight incline uphill from Decedent, and safely behind a large trash dumpster that was inside an enclosure.

29.     Does 2 and 3 were positioned in the parking lot safely between parked cars, approximately twenty-five to thirty feet from Decedent.

30.     While Does 1 through 3 were thus positioned, one of them told Decedent to drop his gun.

31.     Decedent immediately complied with this initial demand and dropped the fake toy gun.

32.     After Decedent dropped the toy gun, Does 2 and 3 moved to within fifteen to twenty feet away from him and shined flashlights directly at him.  Decedent appeared confused and appeared to take a tentative step toward his right in the direction of the toy gun he had dropped, and started to bend over, in the direction of the toy gun.

33.     Within two to three seconds of Decedent leaning over toward the toy gun, defendant Doe 1, who had been safely standing at and/or behind an enclosed trash dumpster approximately fifty feet away from Decedent, moved out of his safe location and without any warning to Decedent immediately and abruptly fired three shots at Decedent, causing Decedent to fall to the ground.

     a.   Five or six seconds later, while Decedent remained on the ground, Doe 1 fired two more shots at Decedent.

b.   Less than ten seconds later, Does 2 and/or 3, who were standing approximately fifteen feet from Decedent and in the potential sight line of Doe 1, opened fire on Decedent.

c.   Doe 1 fired more shots at Decedent, all while Decedent was lying on the ground.

34.   Multiple gunshots fired at Decedent missed him and hit several apartments behind Decedent, causing property damage and terrifying the residents of the Complex.  The apartments that sustained damage were occupied by residents of the Complex.

35.   Prior to using lethal force, Does 1 through 3 did not attempt to assess Decedent's medical condition or mental or psychological state, even though they had been informed, or should have been informed by 911 dispatch, that Decedent was in the midst of a mental health crisis, had a history of mental illness, and had no weapons.

36.   Does 1 through 3 did not use de-escalation techniques, or attempt to speak to Decedent in a professional and nonthreatening way.

37.   Does 1 through 3 did not use any verbal warning that deadly force would be used prior to shooting Decedent multiple times, despite it being feasible to do so.

38.   No defendant issued appropriate commands to Decedent, except to drop the gun, which he did immediately.

39.   At the time of the shooting, Decedent posed no immediate threat of death or serious physical injury to any of the Doe defendants or anyone else.  Decedent never verbally threatened any of the Doe defendants.  Does 1 through 3 were all in a safe location, behind the dumpster enclosure and parked vehicles.  Additionally, Decedent was either going to the ground or was already on the ground when Does 1 through 3 continued to fire shots at him.

40.     Does 1 through 3 immediately resorted to lethal force even though they were faced with a subject who appeared only to tentatively move in the direction of a toy gun that he had initially dropped on command.  There were other less than lethal options available to the police.  The involved officers did not show a reverence for human life.  The involved officers are responsible for every single shot they fired.  This was not an immediate defense-of-life situation.

41.     Upon information and belief, within just a few seconds Decedent sustained eight penetrating gunshot wounds to his chest, legs, arms, and right hand.  Further, as a result of some of these gunshot wounds, several of Decedent's fingers were blown off.

42.     By approximately 11:31pm, about fifteen minutes after  Does 1 through 3 shot Decedent eight times, and when Decedent was quite obviously incapacitated, the officers had already handcuffed Decedent and determined to take him into custody.

43.     No attempt was made to stanche the bleeding caused by the gunshot wounds, until 11:24pm, when one police officer applied a field tourniquet to Decedent's right thigh, where two bullets had entered.  Prior to that minimal effort, from approximately 11:16pm until 11:24pm, Decedent lay on the ground, bleeding.  No attempt was made to stanche the bleeding from the gunshot wounds to his right chest, his left chest, his right buttock, his abdomen, his left thigh, his right hand, or his left arm until the ambulance arrived several minutes later.

44.     The Plymouth Community Ambulance arrived at approximately 11:29pm.  Decedent was immediately transferred to the ambulance, where he became unresponsive at 11:51pm.  He was transferred to the emergency room, arriving at 12:20am.

45.     Despite the efforts of the Plymouth Ambulance, JeffStat, and Mercy Suburban Hospital, Decedent was pronounced dead as a result of multiple gunshot wounds on August 4, 2021 at 1:34am.

46.     Following Decedent's passing, upon information and belief, Defendants disseminated to news organizations and other public entities information it knew or should have known was false and portraying Decedent in a false light.

47.     News organizations and other public entities did in fact publish the information provided to it by defendants concerning Decedent and plaintiffs.

48.     Upon information and belief, defendants disseminated information described herein about Decedent in an attempt to justify, distort, and/or cover up its own conduct described herein.

49.     As a result of the aforesaid conduct and actions of defendants, plaintiffs Lisa Paone and Michael Paone, Jr., Co-Administrators for the Estate of Michael T. Paone, seek damages for the wrongful death of Decedent, damages reflecting the extreme mental and physical pain and suffering, loss of enjoyment of life and loss of life, as well as damages for the deprivation of Decedent's civil rights.

50.     The Co-Administrators of the Estate have also been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of their son, the Decedent, and will continue to be so deprived for the remainder of their natural lives.

51.     The Co-Administrators on behalf of the Estate have incurred expenses in connection with Defendants wrongful conduct.

52.     Additionally, as a result of witnessing, perceiving, and/or being aware of Defendants' wrongful conduct, Lisa Paone and Juliana Paone, individually, have sustained severe emotional distress and have required medical treatment for same.

**COUNT I**
**Fourth and Fourteenth Amendments:  Excessive Force Violation**
**42 U.S.C. § 1983**
**Michael Paone, Jr. and Lisa Paone, Co-Administrators of the Estate**
**of Michael Tristian Paone v. All Defendants**

53.     Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

54.     In committing the acts complained of herein, the defendants acted under color of state law to deprive Decedent of certain constitutionally protected rights under the Fourth and Fourteenth Amendments to the Constitution of the United States of America including, but not limited to the right to be free from excessive use of force by persons acting under color of state law.

55.     Defendant Does 1, 2 and 3 failed to objectively and reasonably assess the facts when they decided to use lethal force on Decedent.

56.     911 dispatch informed Does 1, 2 and 3 that Decedent had no weapons, only a fake toy gun, was in a state of crisis and/or suffering from symptoms of a mental illness, and has a history of mental illness.

57.     At the time Does 1, 2 and 3 began shooting at Decedent, Decedent was not presenting any objective danger to Does 1, 2 and 3, to others, or to himself.

58.     Does 1, 2 and 3 could not subjectively have believed themselves to be in danger.

59.     Does 1, 2 and 3 made a choice to unreasonably use deadly force and this decision to use deadly force did not relate in any way to a proper and conscious assessment of danger and was objectively unreasonable under the circumstances.

60.     The use of deadly force was excessive because this was not an immediate defense of life situation, the involved officers did not give a verbal warning that deadly force would be used despite it being feasible to do so, there were no commands given, and there were other reasonable options available other than shooting and killing Decedent.

61.     This use of deadly force was excessive and unreasonable under the circumstances. Does 1, 2 and 3 were protected by the dumpster and parked vehicles. Decedent was on the ground for many of the gunshots fired by Does 1, 2 and 3.

62.     The conduct of Does 1, 2 and 3 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Decedent.  The conduct of Does 1, 2 and 3 shocks the conscience.  Defendants acted as they did despite the knowledge they had or should have had.  Defendants' conduct was carried out with deliberate indifference and/or reckless disregard to the constitutional rights of Decedent.

63.     As a direct and proximate result of the violation of his constitutional rights by the defendants, Decedent suffered the general and special damages as alleged in this Complaint.

WHEREFORE, Plaintiffs Michael Paone, Jr., and Lisa Paone, Co-Administrators of the Estate of Michael T. Paone, demand relief under 42 U.S.C. §§ 1983 and 1988, compensatory and punitive damages against all defendants jointly and/or severally, in an amount in excess of the statutory jurisdictional limit, plus interest, costs, attorney's fees as well as delay damages, and any other equitable remedy that the Court deems reasonable and just.

**COUNT II**
**Procedural Due Process Pursuant to the Fifth and Fourteenth Amendments**
**42 U.S.C. § 1983**
**Michael Paone, Jr. and Lisa Paone, Co-Administrators of the Estate**
**of Michael Tristian Paone v. All Defendants**

64.     Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

65.     In committing the acts complained of herein, defendants acted under color of state law to deprive Decedent of certain constitutionally protected rights under the Fifth and Fourteenth Amendments to the Constitution of the United States of America including, but not limited to the right not to be deprived of life and liberty without due process.

66.      Defendants' process, if any, created an unnecessary risk of harm to Decedent. Defendants deprived Decedent of his life and liberty interests without due process of law in that no process was provided to Decedent prior to Defendants' shooting him, causing a baseless and unwarranted deprivation of his liberty and life.

67.     The conduct of Does 1, 2 and 3 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Decedent.  The conduct of Does 1, 2 and 3 shocks the conscience.  Does 1, 2 and 3 acted as they did despite the knowledge they had or should have had.  The conduct of Does 1, 2 and 3 was carried out with deliberate indifference and/or reckless disregard to the constitutional rights of Decedent.

68.     As a direct and proximate result of the violation of his constitutional rights by the defendants, Decedent suffered the general and special damages as alleged in this Complaint.

WHEREFORE, plaintiffs Michael Paone, Jr., and Lisa Paone, Co-Administrators for the Estate of Michael T. Paone, demand relief under 42 U.S.C. §§ 1983 and 1988, compensatory and

punitive damages against all defendants jointly and/or severally, in an amount in excess of the statutory jurisdictional limit, plus interest, costs, attorney's fees as well as delay damages, and any other equitable remedy that the Court deems reasonable and just.

### COUNT III
**Substantive Due Process Pursuant to the Fourth and Fourteenth Amendments**
**42 U.S.C. § 1983**
**Michael Paone, Jr. and Lisa Paone, Co-Administrators of the Estate**
**of Michael Tristian Paone v. All Defendants**

69.     Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

70.     In committing the acts complained of herein, the Defendants acted under color of state law to deprive Decedent of certain constitutionally protected rights under the Fourth and Fourteenth Amendments to the Constitution of the United States of America including, but not limited to the right not to be deprived of life and liberty without due process, the right to be free from excessive force, and the right to privacy.

71.     The conduct of Does 1, 2 and 3 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Decedent.  Defendants' conduct shocks the conscience. Defendants acted as they did despite the knowledge they had or should have had. Defendants' conduct was carried out with deliberate indifference and/or reckless disregard to the constitutional rights of Decedent.

72.     As a direct and proximate result of the violation of his constitutional rights by the Defendants, Decedent suffered the general and special damages as alleged in this Complaint.

WHEREFORE, Plaintiffs, Co-Administrators Michael Paone, Jr., and Lisa Paone for the Estate of Michael T. Paone, demand relief under 42 U.S.C. §§ 1983 and 1988, compensatory and

punitive damages against all defendants jointly and/or severally, in an amount in excess of the statutory jurisdictional limit, plus interest, costs, attorney's fees as well as delay damages, and any other equitable remedy that the Court deems reasonable and just.

**COUNT IV**
**Conspiracy to Interfere with Civil Rights**
**42 U.S.C. § 1985**
**Michael Paone, Jr. and Lisa Paone, Co-Administrators of the Estate**
**of Michael Tristian Paone v. All Defendants**

73.     Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein

74.     The constitutional violations as alleged in this Complaint were the result of defendants knowingly and/or recklessly surrounding and shooting Decedent without first using non-lethal means of force before attempting to address, communicate with, and/or control Decedent's behavior and actions.

75.     Defendants knew, or should have known, they were responding to a call, domestic in nature and concerning a mental health crisis.  Defendants knew, or should have known that Decedent did not have a gun on him, but had a fake toy gun as reported to 911.  Defendants were therefore aware of the dangers and/or lack thereof, to themselves and other nearby individuals.

76.     Despite defendants' knowledge, defendants conspired to deprive Decedent of his constitutional rights to life, liberty, due process, the right to privacy and right to be free from excessive force.

77.     As a direct and proximate result of the violation of his constitutional rights by the defendants, Decedent suffered the general and special damages as alleged in this Complaint.

WHEREFORE, plaintiffs Michael Paone, Jr., and Lisa Paone, Co-Administrators for the

Estate of Michael T. Paone, demand relief under 42 U.S.C. §§ 1983, 1985, and 1988, compensatory and punitive damages against all defendants jointly and/or severally, in an amount in excess of the statutory jurisdictional limit, plus interest, costs, attorney's fees as well as delay damages, and any other equitable remedy that the Court deems reasonable and just.

**COUNT V**
**Municipal Liability for Unconstitutional Custom or Policy**
**42 U.S.C. § 1983**
**Michael Paone, Jr. and Lisa Paone, Co-Administrators of the Estate**
**of Michael Tristian Paone v. Defendant Plymouth Township**

78.     Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

79.     On or about August 3, 2021, defendants deprived Decedent of the rights and liberties secured to him by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, in that said defendants and their supervising and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, including but not limited to Decedent, knowingly maintained, enforced and applied an official recognized custom, policy, and practice of:

a.   Failing to adhere to its stated mission of faithfully providing service to all who come within its care and jurisdiction by serving and protecting without bias or prejudice "while affording dignity and respect to all."

b.   Employing and retaining as police officers and other personnel, including defendants Does 1, 2 and 3, whom the Township and certain other Doe defendants, at all times material herein, knew or reasonably should have known had dangerous propensities for abusing their authority and for

mistreating citizens by failing to follow written Plymouth Township Police Department policies;

c.  Inadequately supervising, training, controlling, assigning, and disciplining Township Police Officers, and other personnel, who the Township and certain other Doe defendants, knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

d.  Failing to adequately train and supply officers, including Does 1, 2 and 3, with appropriate policies, regarding the use of excessive force, including deadly force;

e.  Failing to adequately train and supply officers, including Does 1, 2 and 3 with appropriate policies, regarding approaching, apprehending, communicating with, and otherwise handling an individual having a mental health crises;

f.  Failing to adequately enforce minimum standards for police officer safety, training and use of gun standards and qualifications;

g.  Having and maintaining an unconstitutional policy, custom, and practice of using excessive force, including deadly force, which also is demonstrated by inadequate training regarding these subjects.

h.  Having policies or failing to have proper policies to address individuals, including Decedent here, who are in the middle of a mental health crisis.

i.  Failing to utilize the Police Communications Center appropriately, in spite of the Township's website boast of its "state of the art" communication systems and techniques for the immediate delivery of vital information, so that Does 1,

2 and 3 were not informed of pertinent information, including the gist of Sister's message to 911 regarding Decedent's mental state and possession of a toy gun and the fact that Decedent had recently been committed to a nearby psychiatric facility.

j.    Exhibiting a deliberate indifference to individuals' safety and rights in spite of alleged policies, customs, and practices of the Township; and

80.    By reason of the aforementioned policies and practices of the Township or lack thereto, Decedent was severely injured, subjected to pain and suffering, loss of life, liberty and due process.

81.    The Township, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above.   Despite having knowledge as stated above the Township condoned, tolerated and through actions and inactions thereby ratified such policies. The Township also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights and life of Decedent.

82.    By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, the Township and certain of the Doe defendants acted with an intentional, reckless, and callous disregard for the constitutional rights and life of Decedent.

83.    Each of the actions of said defendants were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

84. The policies, practices, and customs implemented and maintained and still tolerated by the Township and the Doe defendants were affirmatively linked to and were a significantly influential force behind the injuries of Decedent.

85. As a direct and proximate result of the violation of his constitutional rights by the Defendants, Decedent suffered the general and special damages as alleged in this Complaint.

WHEREFORE, plaintiffs Michael Paone, Jr., and Lisa Paone, Co-Administrators for the Estate of Michael T. Paone, demand relief under 42 U.S.C. §§ 1983 and 1988, compensatory and punitive damages against all defendants jointly and/or severally, in an amount in excess of the statutory jurisdictional limit, plus interest, costs, attorney's fees as well as delay damages, and any other equitable remedy that the Court deems reasonable and just.

**COUNT VI**
**Municipal Liability – Failure to Train**
**42 U.S.C. § 1983**
**Michael Paone, Jr. and Lisa Paone, Co-Administrators of the Estate**
**of Michael Tristian Paone v. Defendant Plymouth Township**

86. Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

87. While acting under the color of state law and within the course and scope of their employment as police officers for the Township, the shooting of Decedent by Does 1, 2 and 3 deprived Decedent of his rights and liberties secured to him by the Fourth, Fifth and Fourteenth Amendments of the United States Constitution.

88. The training policies of the Township were not adequate to train its police officers, including but not limited to, Does 1, 2 and 3, with regards to; using deadly force; addressing/approaching/handling an individual in a public area during a mental health crises.

89.     The training policies of the Township were not adequate to train its police officers, including but not limited to, Does 1, 2 and 3, with regards to; identifying, with information provided and/or available, an individual experiencing a mental health crises.

90.     As a result of the lack of or improper training, Township police officers, including Does 1, 2 and 3, are not able to handle the usual and recurring situations with which they must encounter and make contact with mentally ill individuals.  Upon information and belief, these inadequate training policies existed prior to the date of this incident and continue to this day.

91.     The Township was deliberately indifferent to and/or recklessly indifferent to the known or obvious consequences of its failure to adequately train its police officers, including Does 1, 2 and 3, with regards to using deadly force.  This inadequate training includes failing to teach officers to give a verbal warning when feasible prior to using deadly force, to give commands when feasible prior to using deadly force, to take cover when the officers believe an individual is armed, to address mentally ill individuals appropriately, to identify indeterminate objects, to announce themselves as police and to use less than lethal options, prior to resorting to the use of deadly force.

92.     Defendant Plymouth Township was aware that failure to implement some sort of training with regards to their officers' use of deadly force and dealing with suspects, including suspects with mental illness who have indeterminate objects nearby or in their hands, would result in unreasonable officer-involved shootings of unarmed individuals.

93.     The failure of the defendant Plymouth Township Police Department to provide adequate training with regards to using deadly force, caused the deprivation of the rights of

Decedent by Does 1, 2 and 3.  Plymouth Township's failure to train is so closely related to the deprivation of the rights of Decedent as to be the moving force that caused the ultimate injury.

94.     The defendant Plymouth Township Police Department failed to utilize the Police Communications Center appropriately, in spite of the Township's website boast of its "state of the art" communication systems and techniques for the immediate delivery of vital information, so that Does 1, 2 and 3 were not informed of pertinent information, including the gist of Sister's message to 911 regarding Decedent's mental state and possession of a toy gun and the fact that Decedent had recently been committed to a nearby psychiatric facility.

95.     The defendant Plymouth Township Police Department failed to adhere to its stated mission of faithfully providing service to all who come within its care and jurisdiction by serving and protecting without bias or prejudice "while affording dignity and respect to all."

96.     By failing to provide adequate training to defendant Plymouth Township's police officers, including Does 1, 2 and 3, these defendants acted with an intentional, reckless, and callous disregard to the constitutional rights and life of Decedent.

97.     As a direct and proximate result of the violation of his constitutional rights by the Defendants, Decedent suffered the general and special damages as alleged in this Complaint.

WHEREFORE, plaintiffs Michael Paone, Jr., and Lisa Paone, Co-Administrators for the Estate of Michael T. Paone, demand relief under 42 U.S.C. §§ 1983 and 1988, compensatory and punitive damages against all defendants jointly and/or severally, in an amount in excess of the statutory jurisdictional limit, plus interest, costs, attorney's fees as well as delay damages. and any other equitable remedy that the Court deems reasonable and just.

## COUNT VII
### Neglect - 42 U.S.C. § 1986
### Michael Paone, Jr. and Lisa Paone, Co-Administrators of the Estate
### of Michael Tristian Paone v. All Defendants

98.     Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

99.     Defendants had a duty to Decedent, to preserve his health and safety and to act in a manner consistent with that.

100.     Upon information and belief, defendants had knowledge of the wrongful acts complained of in this action, had knowledge that the wrongs conspired to be done in this action were about to be committed, and had the power to prevent or aid in preventing the commission of the wrongful acts, neglected and/or refused so to do.

101.     For all such wrongful acts alleged herein to be committed, defendants shall be liable to plaintiffs for all damages caused by such wrongful acts.

102.     Defendants, by using reasonable diligence, could have prevented the wrongful acts alleged herein and failed to do so.

103.     As a direct and proximate result of defendants' negligence, Decedent suffered the general and special damages as alleged in this Complaint.

WHEREFORE, plaintiffs Michael Paone, Jr., and Lisa Paone, Co-Administrators for the Estate of Michael T. Paone, demand relief under 42 U.S.C. §§ 1983, 1986 and 1988, compensatory and punitive damages against all defendants jointly and/or severally, in an amount in excess of the statutory jurisdictional limit, plus interest, costs, attorney's fees as well as delay damages. and any other equitable remedy that the Court deems reasonable and just.

**COUNT VIII**
**State Law Cause of Action Pursuant to 42 Pa. C.S.A § 8302 (Survival)**
**Michael Paone, Jr. and Lisa Paone, Co-Administrators of the Estate**
**of Michael Tristian Paone v. All Defendants**

104.    Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

105.    Plaintiffs Michael Paone, Jr. and Lisa Paone, in their capacity as Co-Administrators of the Estate of Michael Tristian Paone, bring this action under and by virtue of the Pennsylvania Survival Act, 42 Pa. C.S.A § 8302.

106.    Plaintiffs claim on behalf of said Estate damages suffered by reason of the death of the Decedent, as well as for the pain and suffering sustained by the Decedent prior to his death.

WHEREFORE, plaintiffs Michael Paone, Jr., and Lisa Paone, Co-Administrators for the Estate of Michael T. Paone, demand compensatory and punitive damages against all defendants jointly and/or severally, in an amount in excess of the statutory jurisdictional limit, plus interest, costs, attorney's fees as well as delay damages. and any other equitable remedy that the Court deems reasonable and just.

**COUNT IX**
**State Law Cause of Action for Wrongful Death**
**Pursuant to 42 Pa. C.S.A § 8301**
**Michael Paone, Jr. and Lisa Paone, Co-Administrators of the Estate**
**of Michael Tristian Paone v. All Defendants**

107.    Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

108.    Due to the conduct of defendants, Decedent has left surviving the following individuals entitled to recover for his death:  Lisa Paone, his mother and Michael Paone, Jr., his father.

109.    Said individuals, by reason of the death of Decedent, have suffered financial loss and other expenses of administration of the Decedent's Estate.

110.    Plaintiffs' statutory survivors have further suffered a loss of Decedent's society and comfort, friendship, guidance, love and affection, and other damages as are recoverable under the Wrongful Death Act of the Commonwealth of Pennsylvania.

111.    Decedent did not bring an action for personal injuries during his lifetime, and no other actions before death of the Decedent have been commenced against these Defendants.  The Plaintiffs, therefore, bring this action under and by virtue of the Pennsylvania Wrongful Death Act, 42 Pa. C.S.A § 8301.

112.    Plaintiffs are entitled to recover, in addition to other damages, amounts for reasonable hospital, nursing, medical and funeral expenses, and expenses of the administration necessitated by reason of the conduct causing the death of plaintiffs' decedent.

WHEREFORE, plaintiffs Michael Paone, Jr., and Lisa Paone, Co-Administrators for the Estate of Michael T. Paone, demand relief pursuant to 42 Pa. C.S.A. § 8301 against all defendants jointly and/or severally, in an amount in excess of the statutory jurisdictional limit, plus interest, costs, attorney's fees as well as delay damages. and any other equitable remedy that the Court deems reasonable and just.

**COUNT X**
**State Law Cause of Action for Assault and Battery**
**Michael Paone, Jr. and Lisa Paone, Co-Administrators of the Estate**
**of Michael Tristian Paone v. All Defendants**

113.    Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

114.    Does 1, 2 and 3, while acting within the course and scope of their duties and acting under color of state law as police officers for the Township Police Department, intentionally shot Decedent multiple times while Decedent was going to the ground and continued to shoot Decedent after he was already on the ground, striking Decedent multiple times.

115.    Decedent was unarmed at the time of the shooting.

116.    Does 1, 2 and 3 did not give Decedent any verbal warning or commands.

117.    Does 1, 2 and 3 knew or should have known that Decedent would understand and comply with any verbal warning or commands, as demonstrated by his throwing the toy gun on the ground when instructed to do so.

118.    Does 1, 2 and 3 were positioned in a safe place prior to shooting Decedent, and as such, Does 1, 2 and 3 were not facing imminent harm when they began shooting Decedent.

119.    The conduct of Does 1, 2 and 3 was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Decedent.

120.    The aforesaid acts of Does 1, 2 and 3 constitute an unwarranted assault and battery upon Decedent, and represent conduct that is intolerable and wholly unnecessary in a civilized society.

121.   As a direct and proximate result of the assault and battery committed by Does 1, 2 and 3, Decedent was caused to suffer severe mental and physical pain and suffering before dying, loss of enjoyment of life, and ultimately his life.

WHEREFORE, plaintiffs Michael Paone, Jr., and Lisa Paone, Co-Administrators for the Estate of Michael T. Paone, demand relief for the unwarranted assault and battery inflicted on Decedent, as well as compensatory and punitive damages against all defendants jointly and/or severally, in an amount in excess of the statutory jurisdictional limit, plus interest, costs, attorney's fees as well as delay damages. and any other equitable remedy that the Court deems reasonable and just.

### COUNT XI
### Defamation - Pennsylvania Law
### Michael Paone, Jr. and Lisa Paone, Co-Administrators of the Estate
### of Michael Tristian Paone v. Defendants Doe 1 through 10

122.   Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

123.   Defendants reported a version of the events of August 3, 2021 and August 4, 2021 which they knew, or in the exercise of reasonable diligence should have known, was false, to news outlets and other public entities.  Defendants did this with the intent to justify, distort and/or cover up their own conduct.

124.   Defendants knew, or in the exercise of reasonable diligence, should have known the entities it reported to would disclose to others who would believe said information.

125.   As a direct and proximate result of the inaccurate, incomplete, and/or false statements made to third persons by Defendants, plaintiffs Michael Paone, Jr. and Lisa Paone,

co-Administrators of the Estate of Michael Tristian Paone, have suffered the general and special damages as alleged in this Complaint.

WHEREFORE, plaintiffs Michael Paone, Jr., and Lisa Paone, Co-Administrators for the Estate of Michael T. Paone, demand relief for defendants' defamatory conduct, as well as, compensatory and punitive damages against all defendants jointly and/or severally, in an amount in excess of the statutory jurisdictional limit, plus interest, costs, attorney's fees as well as delay damages. and any other equitable remedy that the Court deems reasonable and just.

**COUNT XII**
**State Law Cause of Action for Negligent Infliction of Emotional Distress**
**Plaintiffs Lisa Paone and Juliana Paone, Individually v. All Defendants**

126.    Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

127.    All defendants owed duties of care to Plaintiffs, including the duty not to shoot Decedent, their beloved son and brother, when they called 911 for help due to Decedent's mental health crisis.  Does 1, 2 and 3 breached this duty, as well as other duties owed to plaintiffs.

128.    Does 1, 2 and 3 negligently caused physical injury and death to Decedent when Does 1, 2 and 3 discharged their firearms at Decedent, striking him multiple times and eventually killing him.

129.    The use of deadly force by Does 1, 2 and 3 was excessive, unreasonable, and impulsive.

130.    Does 1, 2 and 3 were negligent in discharging their firearms at Decedent, including pre-shooting negligent conduct, actions, inactions, and tactics.

131.    Mother was present at the scene, which is her residence, when Does 1, 2 and 3 fatally discharged their firearms at Decedent and Mother was aware that Decedent was being injured.

132.    Sister was present at the scene, which is her residence, when Does 1, 2 and 3 fatally discharged their firearms at Decedent and Sister was aware that Decedent was being injured.

133.    As a result of being present at the scene and witnessing and/or perceiving her son, Decedent, was being fatally shot by Does 1, 2 and 3, Mother suffered severe emotional distress, including but not limited to, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, guilt, and shame.

134.    As a result of being present at the scene and witnessing and/or perceiving her brother, Decedent, being fatally shot by Does 1, 2 and 3, Sister suffered severe emotional distress, including but not limited to, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, guilt, and shame.

135.    On information and belief, any ordinary reasonable person would be unable to cope with seeing their beloved son and brother fatally shot multiple times by the police, at their own residence, after their own call for help from police to deal with his mental health crisis.

WHEREFORE, Plaintiffs Lisa Paone and Juliana Paone, individually, demand compensatory damages for their emotional distress, an award of attorneys' fees and costs, and any other equitable remedy that the Court deems reasonable and just.

**COUNT XIII**
**State Law Cause of Action for Intentional Infliction of Emotional Distress**
**Plaintiffs Lisa Paone and Juliana Paone, Individually v. All Defendants**

136.   Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

137.   Does 1, 2 and 3 each intentionally caused physical injury and death to Decedent when Does 1, 2 and 3 discharged their firearms at Decedent, striking him multiple times and eventually killing him.

138.   The use of deadly force by Does 1, 2 and 3 was intentional, excessive, unreasonable, extreme and outrageous, including pre-shooting conduct, actions, and tactics.

139.   Mother was present at the scene, which is her residence, when Does 1, 2 and 3 fatally discharged their firearms at Decedent and Mother was aware that Decedent was being injured.  Mother heard gunshots and saw her son lying on the ground.  Mother saw her son reach his hand up before he apparently lost strength and consciousness.

140.   Even before they shot Decedent, Does 1, 2 and 3 knew that Mother was nearby, but they never instructed her to leave the area.

141.   As a result of being present at the scene and witnessing and/or perceiving her son, Decedent, being fatally shot by Does 1, 2 and 3, Mother suffered serious emotional distress, including but not limited to, anguish, depression, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, guilt and shame.

142.   Sister was present at the scene, which is her residence, when Does 1, 2 and 3 fatally discharged their firearms at Decedent and Sister was aware that Decedent was being injured. Sister stood looking out the window of an exterior door to the adjacent apartment

building.  Sister saw Does 1, 2 and 3 surround and shoot Decedent.  Sister was on the telephone with 911 while she watched her brother being shot by police.  She later repeated to Township police officers that she told 911 her brother had a fake toy gun.

143.    Even before they shot Decedent, Does 1, 2 and 3 knew that Sister was nearby, but they never instructed her to leave the area.

144.    As a result of being present at the scene and witnessing and/or perceiving her brother, Decedent, being fatally shot by Does 1, 2 and 3, Sister suffered serious emotional distress, including but not limited to, anguish, depression, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, guilt, and shame.

145.    On information and belief, any ordinary reasonable person would be unable to cope with seeing their beloved son or brother fatally shot multiple times by the police, at their own residence, after their own call for help from police to deal with a mental health crisis of their son and brother.

WHEREFORE, Plaintiffs, Lisa Paone and Juliana Paone, individually, demand compensatory and punitive damages for intentional infliction of emotional distress, an award of attorneys' fees and costs, and any other equitable remedy that the Court deems reasonable and just.


Respectfully submitted,

/s/ Howard A. Rosen_____
Howard A. Rosen, Esq. (ID No. 200120)
H. Rosen Law, P.C.
1500 John F. Kennedy Blvd, Ste. 1723
Philadelphia, PA  19102
215-948-2264 telephone

267-399-3891 fax
har@hrosenlaw.com


/s/ Patricia Sons Biswanger
Patricia Sons Biswanger, Esq. (ID No. 71076)
217 North Monroe Street
Media, PA  19063
866-731-9601 fax
610-608-0687 telephone
patbiswanger@gmail.com

*Attorneys for plaintiffs*