## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ESTATE OF MICHAEL TRISTIAN | : | |
| PAONE, deceased, by and through the | : | |
| Administrators of the Estate, MICHAEL | : | |
| PAONE, JR. and LISA PAONE; LISA | : | |
| PAONE, individually; and JULIANA | : | |
| PAONE, individually, | : | CIVIL ACTION |
|      Plaintiffs, | : | |
| | : | |
|   v. | : | |
| | : | |
| PLYMOUTH TOWNSHIP and | : | |
| PLYMOUTH TOWNSHIP POLICE | : | |
| OFFICERS DOES 1-10, | : | No. 22-2178 |
|      Defendants. | : | |

### <u>MEMORANDUM</u>

Schiller, J.                                                           December 5, 2022

Plymouth Township police officers shot twenty-two-year-old Michael Tristian Paone in the late hours of August 3, 2021. He died soon thereafter. At the time of the shooting, Paone wielded a toy gun in the midst of a mental health crisis. Paone's mother, Lisa Paone, and father, Michael Paone, Jr., acting on behalf of his estate, bring this action against Plymouth Township (the "Township") and the Plymouth Township police officers ("John Doe officers") who were present at Paone's death (collectively, "Defendants") asserting claims under 42 U.S.C. §§ 1983, 1985, 1986, 1988, and various state law torts. Paone's mother and his sister, Juliana Paone, also bring claims against Defendants on their own behalf for negligent and intentional infliction of emotional distress. The Township moves to dismiss all of Plaintiffs' claims against it. For the reasons that follow, the Court will grant the Township's motion to dismiss.

## I.    <u>BACKGROUND</u>

Plymouth Township police officers shot and killed then-twenty-two-year-old Michael Tristian Paone on the evening of August 3, 2021. (First Am. Compl., ECF 8, ¶¶ 13, 34.) At that

1

time, Paone lived with his mother and sister in an apartment at the Plymouth Gardens apartment complex in Conshohocken, Pennsylvania. (*Id.* ¶¶ 14-15.) He had a documented history of mental illness and was diagnosed with attention deficit disorder, anxiety disorder, obsessive-compulsive disorder, and bipolar disorder with features of schizophrenia, paranoia, delusions, and grandiosity. (*Id.* ¶ 13.) A few weeks before this death, he had been involuntarily hospitalized at a nearby Montgomery County hospital for mental health concerns following a violent incident with hospital staff, which resulted in staff calling the Abington Township Police Department for assistance.[1] (*Id.* ¶ 25.)

At about 10:45 p.m. on August 3, Paone approached his sister in the apartment complex parking lot as she walked to her car. (*Id.* ¶¶ 15-16.) He was agitated and exhibited symptoms consistent with his mental illness. (*Id.* ¶ 15.) Paone and his sister then returned to the apartment, where Paone became aggressive with his mother and sister. (*Id.* ¶¶ 17-18.) His sister left the apartment and dialed 911 from her cell phone at about 11:11 p.m. (*Id.* ¶ 18.) She went to an adjacent apartment building to make the call and spoke with the emergency dispatch for five minutes before inadvertently disconnecting, prompting her to call again for about twelve minutes. (*Id.* ¶ 22.) She told the dispatcher that Paone had a knife and was trying to stab their mother. (*Id.* ¶ 23.) She also mentioned Paone had mental health issues and had recently been treated at an inpatient mental health facility. (*Id.* ¶ 25.) At around 11:14 p.m., the dispatcher asked Paone's sister whether Paone had any weapons. (*Id.* ¶ 26.) She claims to have replied that he possessed a "fake toy gun." (*Id.*) Shortly after his sister's emergency call and before the police arrived, Paone

---

[1]     Despite Paone's diagnoses and recent hospitalization, he did not always exhibit symptoms of his illnesses and was able to maintain social relationships with others. (*Id.* ¶ 13.)

calmed down and stopped his aggressive behavior. (*Id.* ¶¶ 19-21.) He left the family's apartment for the apartment complex's outdoor grounds. (*Id.* ¶¶ 20-21.)

At about 11:15 p.m., John Doe Plymouth Township police officers arrived at the apartment complex and approached Paone outside. (*Id.* ¶ 28.) One of the responding officers was "new to the police force and considered a rookie," and all of the responding officers lacked proper training and "[were] not able to handle the usual and recurring situations with which they must encounter and make contact with mentally ill individuals." (*Id.* ¶¶ 44, 103.) Upon arrival, one officer was positioned behind a large, enclosed metal dumpster on an incline about fifty feet uphill from Paone. (*Id.* ¶ 29.) At least two other officers were in the parking lot, positioned between parked cars about twenty-five to thirty-five feet from Paone. (*Id.* ¶ 30.) An officer ordered Paone to drop his gun. (*Id.* ¶ 31.) Paone complied and dropped his toy gun. (*Id.* ¶ 32.) After he did, at least two officers moved within fifteen to twenty feet from him, shining their flashlights at him. (*Id.* ¶ 33.) Confused, Paone appeared to take a step toward the toy gun and began to bend over toward it. (*Id.*) Two to three seconds later, the police officer positioned uphill near the dumpster fired three shots at Paone, dropping him to the ground. (*Id.* ¶ 34.) Five or six seconds later, another officer fired two more shots at Paone as he laid on the ground. (*Id.* ¶ 34(a).) No more than ten seconds later, at least two other officers fired on Paone. (*Id.* ¶ 34(b).) Later, another officer also shot at him. (*Id.* ¶ 34(c).) In total, Paone sustained eight gunshots to his chest, legs, arms, and right hand. (*Id.* ¶ 42.)

At about 11:29 p.m., a Plymouth Community Ambulance arrived at the scene and Paone was immediately transferred inside the vehicle. (*Id.* ¶ 46.) At about 11:31 p.m., the officers handcuffed Paone and attempted to take him into custody.[2] (*Id.* ¶ 43.) Paone purportedly became

---

[2]     The circumstances of this purported handcuffing are not clear from the First Amended Complaint. Plaintiffs do not allege where this handcuffing occurred. The alleged timing of events suggests John Doe officers handcuffed Paone while in a moving ambulance.

unconscious around 11:51 p.m. and was transferred to the emergency room soon thereafter.[3] (*Id.* ¶ 46.) Paone died from his gunshot wounds at 1:34 a.m. on August 4, 2021. (*Id.* ¶ 47.)

Following Paone's death, Defendants allegedly disseminated information to news organizations and public entities that they knew or should have known was false. (*Id.* ¶¶ 49-50.) Plaintiffs plead that they suffered extreme mental and physical pain and suffering from Paone's killing. (*Id.* ¶¶ 51-52.)

## II.   <u>STANDARD OF REVIEW</u>

In deciding the Township's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded allegations in the Complaint and make all reasonable inferences in favor of Plaintiffs. *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021). A well-pleaded complaint "require[s] only a short and plain statement of the claim showing that the pleader is entitled to relief" and need not contain "detailed factual allegations." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-34 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). To survive the Township's motion, Plaintiffs must allege enough factual matter, taken as true, to suggest the required elements of the his claims and raise a reasonable expectation that discovery will reveal evidence of these elements. *Id.*; *see also Oakwood Lab'ys*, 999 F.3d at 904. In turn, the Court must "draw on its judicial experience and common sense" to find, at minimum, "a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

---

[3]    It is not clear from the First Amended Complaint where Paone became unconscious—the Plaintiffs do not plead whether this occurred in the ambulance, emergency room, or another part of the hospital.

III.   **DISCUSSION**

Plaintiffs' First Amended Complaint lists thirteen counts, including claims for: (I) Fourth Amendment excessive force against Defendants; (II) denial of procedural due process against Defendants; (III) denial of substantive due process against Defendants; (IV) section 1985 conspiracy against Defendants; (V) section 1983 municipal liability for an unconstitutional custom or policy against Plymouth Township; (VI) section 1983 municipal liability for failure to train against Plymouth Township; (VII) section 1986 neglect against Defendants; (VIII) state survival claim against Defendants;[4] (IX) wrongful death against Defendants; (X) assault and battery against Defendants; (XI) defamation against Officers Does; (XII) negligent infliction of emotional distress against Defendants; and (XIII) intentional infliction of emotional distress against Defendants.

A.   **42 U.S.C. § 1983 (Counts I, II, III, V and VI)**

1.   *Monell* Liability

Plaintiffs' First Amended Complaint asserts claims against the Township pursuant to 42 U.S.C. § 1983 for violations of the Fourth, Fifth and Fourteenth Amendments. As an initial matter, "a municipality cannot be held liable under [section] 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs. City of N.Y.*, 436 U.S. 658, 691 (1978); *see also City of Canton v. Harris*, 489 U.S. 378, 385 (1989) ("[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue.") (emphasis in original). Instead, to state a section 1983 claim for municipal liability, Plaintiffs may allege that the Township's policies or customs caused an alleged constitutional violation. *See Monell*, 436 U.S. at 694. Alternatively, they may state a claim for municipal liability under section 1983 by

---

[4]    All state law claims are brought under Pennsylvania law. (*See id.* ¶¶ 119, 124-25, 135, 139, 149, 159.)

alleging failure to train, supervise or discipline employees. *See Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019); *see also Forrest v. Parry,* 930 F.3d 93, 105 (3d Cir. 2019) ("A plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, or that they were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice.") (citations omitted); *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) ("[I]n the absence of an unconstitutional policy, a municipality's failure to properly train its employees and officers can create an actionable violation of a party's constitutional rights under § 1983."). Because Plaintiffs have not sufficiently alleged facts to support either basis for a finding of municipal liability under section 1983, the Court will dismiss their claims against the Township in Counts I, II, III, V and VI of the First Amended Complaint with leave to amend.

### a.    Policy or Custom

To satisfy the requirements of Rule 12(b)(6), a plaintiff must "identify a custom or policy, and specify what exactly that custom or policy was," *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). A policy "need not be passed by a legislative body, or even be in writing, to constitute an official policy for the purposes of [section] 1983." *Porter v. City of Phila.*, 975 F.3d 374, 383 (3d Cir. 2020). A decision from an official with decisionmaking authority may, in fact, constitute an official policy. *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986)). A course of conduct "so permanent and well settled as to constitute a custom or usage with the force of law" may constitute an official custom. *Monell*, 436 U.S. at 691.

Under either theory, Plaintiffs "must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Watson v. Abington Twp.*, 478 F.3d 144, 155-56 (3d Cir. 2007) (internal quotations omitted); *see also Lewis v. City of Phila.*, No. 16-6375, 2017 WL 839478, at *3 (E.D.

Pa. Mar. 3, 2017). In addition, Plaintiffs must show a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton*, 489 U.S. at 386; *see also Estate of Roman*, 914 F.3d at 798 (requiring a plaintiff to "demonstrat[e] an 'affirmative link' between the policy or custom and the particular constitutional violation he alleges"); *Bielevicz v. Dubinon*, 915 F.15 F.2d 845, 851 (3d Cir. 1991) ("[P]laintiffs must simply establish a municipal custom coupled with causation—i.e., that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations."); *Pinkston v. City of Jersey City*, No. 19-13285, 2020 WL 4251485, at *3 (D.N.J. July 24, 2020).

Here, Plaintiffs rely on the Township police department's mission statement and the Township's website to plead the existence of an official policy. Specifically, Plaintiffs allege the Township police department's mission statement is "to serve and protect without bias or prejudice, maintaining peace, security, and order while affording dignity and respect to all" and the Township's website boasts "'state of the art' communication systems and techniques for the immediate delivery of vital information." (First Am. Compl. ¶¶ 92, 108-09.) Even if the Court deems these statements "policies" for the purposes of *Monell* liability, these are not the type of policies that cause *any* constitutional deprivations. Policies to protect and serve in a fair and dignified manner and use a modern communication system do not plausibly lead to any deprivation of a constitutional right.

Plaintiffs also allege it was Township policy or custom to, *inter alia*: (1) employ and retain officers who had dangerous propensities; (2) fail to adequately enforce minimum standards for officer safety and use of gun standards; (3) use excessive force, including deadly force; (4) exhibit "deliberate indifference to individuals' safety;" and (5) have policies or fail to have proper policies addressing individuals having a mental health crisis. (*Id.* ¶ 92.) However, their allegations are not

enough to establish the existence of any policy. They fail "to allege when these policies were adopted, by whom, or any content of the alleged formal policies." *Witt v. City of Vineland*, No. 20-14678, 20221 WL 3465597, at *6 (D.N.J. Aug. 6, 2021); *Boyden v. Twp. of Upper Darby*, 5 F. Supp. 3d, 731, 743 (E.D. Pa. 2014) (suggesting plaintiff failed to state claim for an unconstitutional policy because he did not allege a final policymaker); *Siceloff v. Twp. of West Deer*, No. 11-783, 2013 WL 3989427, at *9 (W.D. Pa. Aug. 2, 2013) (dismissing *Monell* claim when plaintiffs "failed to identify *any* policymaker") (emphasis in original); *Joyner v. City of Wilmington*, No. 14-975, 2015 WL 4730914, at *4 (D. Del. Aug. 10, 2015) (holding plaintiff's general allegations of failure to establish proper policies regarding use of weapon and failure to follow guidelines on use of force are insufficient and dismissing *Monell* claim).

Nor are their allegations enough to establish the existence of a custom. "Custom requires proof of knowledge and acquiescence by the decisionmaker." *McTernan*, 564 F.3d at 658 (citing *Watson*, 478 F.3d at 154). Plaintiffs do not allege any facts to show a pattern of widespread conduct that would suggest a Township official who has the power to make policy acquiesced to unconstitutional conduct. *See Ewing v. City of Phila.*, No. 20-3170, 2021 WL 6197368, at *6-7 (E.D. Pa. Dec. 30, 2021) (dismissing plaintiff's *Monell* claim when he did not plead any "factual support, statistical or otherwise" showing custom); *Robinson v. City of Phila.*, No. 15-1574, 2015 WL 5965003, at *9, *11-12 (E.D. Pa. Oct. 13, 2015) (dismissing plaintiff's *Monell* claim when he only alleged general customs that failed to demonstrate acquiescence); *cf. Beck v. City of Pittsburgh*, 88 F.3d 966, 972 (3d Cir. 1996) (holding plaintiff's factual allegations of similar incidents may demonstrate plausible existence of municipal custom through acquiesce); *Witt*, 2021 WL 3465597, at *5 (holding plaintiff pleaded enough information of an unconstitutional custom when he included facts of "numerous incidents" of past excessive force); *Harris v. City of Phila.*,

171 F. Supp. 3d 395, 401-02 (E.D. Pa. 2016) (finding a custom where there were "multiple incidents" of excessive use of force). Plaintiffs have not sufficiently alleged the existence of a Township policy or custom that can support their section 1983 claims against it based on a theory of municipal liability.

### b.    Failure-or-Inadequacy

A plaintiff may also allege municipal liability through a "failure-or-inadequacy" claim. *Forrest*, 930 F.3d at 106. So, Plaintiffs may assert a claim against the Township by alleging its failure to train, supervise, or discipline its officers violated Paone's constitutional rights. *See City of Canton*, 489 U.S. at 380; *Estate of Roman*, 914 F.3d at 798; *Reitz*, 125 F.3d at 145. They must allege sufficient facts to show that the Township's "failure to train its employees reflects a deliberate or conscious choice." *Estate of Roman*, 914 F.3d at 798 (citing *Brown*, 269 F.3d at 215) (internal quotations omitted). "For claims involving police officers, the Supreme Court has held that the failure to train 'serve[s] as [a] basis for [section] 1983 liability only where [it] . . . amounts to a deliberate indifference to the rights of the persons with whom the police come into contact.'" *Id.* (quoting *City of Canton*, 489 U.S. at 388). Plaintiffs may plead deliberate indifference by showing that the (1) "municipal policymakers kn[ew] that employees will confront a particular situation;" (2) "the situation involve[d] a difficult choice or a history of employees mishandling;" and (3) "the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* (citing *Doe v. Luzerne Cnty.*, 660 F.3d 169, 180 (3d Cir. 2011)).

There are two ways Plaintiffs may plead deliberate indifference. "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference" and make out a failure-to-train claim. *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citing *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)); *see also Davis v. City*

*of Phila.*, 284 F. Supp. 3d 744, 756 (E.D. Pa. 2018) (quoting *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014)); *Ewing*, 2021 WL 6197368, at *7. But Plaintiffs also may properly plead a failure-to-train claim if the need for training in particular circumstances is "so obvious" that a failure to do so would amount to deliberate indifference. *Thomas*, 749 F.3d at 223; *Davis*, 284 F. Supp. 3d at 755-56. Under a circumstance like that, a single incident may provide the basis for deliberate indifference depending on the "likelihood the situation will recur and the predictability that an officer lacking specific tools to handle the situation will violate citizens' rights." *Thomas*, 749 F.3d at 223-23; *Davis*, 284 F. Supp. 3d at 756. "Establishing a failure to train claim under [section] 1983 is difficult." *Pinkston*, 2020 WL 4251485, at *4 (citing *Reitz*, 125 F.3d at 145 and *City of Canton*, 489 U.S. at 387).

Plaintiffs allege the Township is liable for violations of Paone's constitutional rights under a failure-or-inadequacy theory as a result of:

- "Inadequately supervising, training, controlling, assigning, and disciplining Township Police Officers, and other personnel, who the Township and certain other Doe defendants, knew or [should have known] had the aforementioned propensities and character traits [for mistreating citizens and failing to follow written procedures];"

- "Failing to adequately train and supply officers, including John Doe [Officers] . . . regarding use of excessive force, including deadly force;"

- "Failing to adequately train and supply officers, including John Doe Officers . . . regarding approaching, apprehending, communicating with, and otherwise handling an individual having a mental health crisis;"

- "Failing to teach officers to give a verbal warning when feasible prior to using deadly force;"

- "Failing to teach officers to give commands when feasible prior to using deadly force;"

- "Failing to teach officers to take cover when the officers believe an individual is armed;"

- "Failing to teach officers to address mentally ill individuals appropriately;"

10

- "Failing to teach officers to identify indeterminate objections;" and
- "Failing to teach officers to announce themselves as police and to use less than lethal options prior to the use of deadly force"

(First Am. Compl. ¶¶ 92, 101-04.) Plaintiffs also allege the Township was aware that failure to train its officers would result in shootings of unarmed individuals and that its John Doe officers acted with an "intentional, reckless, and callous disregard to" Paone's constitutional rights. (*Id.* ¶¶ 105, 110.) They assert the Township has encountered "usual and recurring situations with which they must encounter and make contact with mentally ill individuals." (*Id.* ¶ 103.)

Plaintiffs' general allegations of failure to train on using "excessive force" and "giving commands" and "tak[ing] cover when an individual is armed" are unsupported by any factual allegations concerning prior use of excessive force, failure to give commands, or failing to take cover. Plaintiffs must allege past incidents concerning these purported deficiencies, or some other type of information, to suggest any failure to train reflects deliberate indifference to Paone's rights. *See Davis*, 284 F. Supp. 3d at 756 (holding that a pattern of past violative conduct is typically necessary to make out a failure-to-train claim); *McLaughlin v. Cunningham*, No. 13-1926, 2014 WL 1225935, at *11-12 (E.D. Pa. Mar. 5, 2014) (dismissing plaintiff's failure-to-train claim because he did not "provide[] any additional factual information concerning the prior excessive-force incidents involving [defendant officer]," even though the existence of these incidents could be reasonably inferred from the complaint). They do not. Instead, Plaintiffs allege only that

> [t]he conduct of John Doe Defendants 1 through 10 was so brazen and outrageous that *discovery is likely* to reveal the Doe defendants were emboldened to act as they did because it was not the first time at least one of the Doe defendants had acted as such, that the defendant Township knew of this prior conduct, and failed to take any action to prevent such conduct in the future.

(First Am. Compl. ¶ 65 (emphasis added)). As the Township argues, "that the Plaintiffs may not have the names of the police officers might justify naming them as John Does, . . . but it does not

justify . . . naming Plymouth Township . . . ." (Def.'s Reply Brief in Supp. of Mot. to Dismiss Under R. of Civ. P. 12(b)(6) [Def.'s Reply], ECF 11, at 2.) Rule 8 requires more than vague and conclusory allegations and more than speculation and possibility. *See* Fed. R. Civ. P. 8(a).

Although Plaintiffs come closer to adequately pleading deliberate indifference for their claims based on failure to provide mental health training, they still do not allege enough facts to "nudge" them "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. They allege the Township had inadequate policies to train its officers on the use of deadly force with individuals suffering a mental health crisis (First Am. Compl. ¶ 102), it knew this lack of training would lead to harm (*id.* ¶ 110), Township officers interact with individuals undergoing mental health crises on a "usual and recurring" basis, (*id.* ¶ 103), and the lack of training caused Paone's injury (*id.* ¶ 107). However, Plaintiffs do not plead any facts supporting a pattern of past violative conduct against individuals suffering mental health crises; the only incident Plaintiffs include in the First Amended Complaint is Paone's fatal encounter with the John Doe officers. And Plaintiffs fail to plead a claim for single-incident liability because they do not show *why* any training was so inadequate as to be "so obvious" that a failure to train constitutes deliberate indifference. They do not allege any facts about "the likelihood that the situation will recur or the predictability that an officer lacking specific tools to handle the situation will violate citizens' rights." *Thomas*, 749 F.3d at 223-23 (alteration omitted); *see also Haberle v. Troxell*, 885 F.3d 170, 182-83 (3d Cir. 2018) (affirming dismissal of failure-to-train claim because the plaintiff did not plead facts that risk of harm of police officers knocking on the door of mentally ill individuals was "so great and so obvious" as to constitute deliberate indifference); *Weiland v. Palm Beach Cnty. Sheriffs Office*, 792 F.3d 1313, 1329 (11th Cir. 2015) (affirming dismissal of failure-to-train claim because the plaintiff did not allege the "need for specialized training in constitutional restrictions on the use of

force when dealing with mentally ill citizens is 'so obvious'" that failure to train amounts to deliberate indifference); *Watkins v. Bigwood*, No. 18-63035, 2020 WL 3791610, at *9 (S.D. Fla. July 7, 2020) (dismissing failure-to-train claim for lack of adequate policy concerning police interaction with mentally ill individuals because the plaintiff did not allege any facts of why alleged deficiency would be "so obvious" under Florida state law). Plaintiffs' allegations fall short of what is needed to allege a viable municipal liability claim against the Township based on any failure-or-inadequacy. *But see Estate of Chivrell v. City of Arcata*, No. 22-19, 2022 WL 3691029, at *3-5 (N.D. Cal. Aug. 25, 2022) (holding plaintiff did state a single-incident failure-to-train claim when police officers shot and killed man suffering from a mental illness); *Redclift v. Schuylkill Cnty.*, No. 21-1866, 2022 WL 3951356, at *10 (M.D. Pa. Aug. 31, 2022) (holding plaintiff stated a failure-to-train claim for failure to properly train officers on risk of arrestee suicide).

The Court will dismiss Plaintiffs' section 1983 claims against the Township without prejudice (Counts I, II, III, V, and VI of the First Amended Complaint) because they have not alleged enough facts to establish either of the two ways in which a section 1983 claim can proceed against a municipality.

### 2. Procedural and Substantive Due Process Claims (Counts II and III)

Even if Plaintiffs did allege a basis for *Monell* liability, their due process claims against the Township pursuant to section 1983 (Counts II and III) could not withstand the Township's motion. In Count II, Plaintiffs allege Defendants' conduct violated Paone's right to procedural due process.[5] They allege "Defendants' process, if any, created an unnecessary risk of harm to

---

[5]      Count II is a claim for "violation of procedural due process rights pursuant to the Fifth and Fourteenth Amendment[s]." (First Am. Compl. at 12.) Defendants are correct in noting that the Fifth Amendment applies only to the federal government and its officers and the due process claim should be considered under the Fourteenth Amendment. (Def.'s Brief in Supp. of Mot. to Dismiss Under R. of Civ. P. 12(b)(6) [Def.'s Brief], ECF 9, at 7.) Plaintiffs acknowledge they only invoke

[Paone]" and that he was deprived "of his life and liberty interests without due process of law in that no process was provided to [him] prior to Defendants' shooting him, causing a baseless and unwarranted deprivation of his liberty and life." (First Am. Compl. ¶ 69.) Count III alleges Defendants' actions violated Paone's rights to substantive due process including, but not limited to, the "right to privacy." (*Id.* ¶ 76.)

The Township argues the Court should dismiss both due process claims because they violate the more-specific provision rule and are better analyzed under the Fourth Amendment. (Def.'s Brief at 7-10.) Under the more-specific provision rule, when a constitutional claim is covered by a specific constitutional provision (i.e., the Fourth Amendment), "'the claim must be analyzed under the standard appropriate to that specific provision . . . .'" *DeLade v. Cargan*, 972 F.3d 207, 210 (3d Cir. 2020) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)); *see also Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 447 (3d Cir. 2020) (citing *Lanier*, 520 U.S. at 272 n.7); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (same). Excessive force claims arising out of an arrest are analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386 (1989). Plaintiffs contend their due process claims are distinct from their Fourth Amendment excessive force claim because the John Doe officers "provided no process before shooting Mr. Paone." (Pls.' Opp. at 7.)

---

the Fifth Amendment as incorporated through the Fourteenth Amendment. (First Am. Compl. ¶ 68; Pls.' Brief in Opp'n to Defs.' Mot. for Partial Dismissal [Pls.' Opp.] at 6-7.) Because John Doe officers are state officials, the Court dismisses any Fifth Amendment claim and considers Plaintiffs claims grounded in the Fourteenth Amendment. *See Bergdoll v. City of York*, 515 F. App'x 165, 170 (3d Cir. 2013) ("As the [d]istrict [c]ourt noted, [plaintiff's] Fifth Amendment claim fails because the Due Process Clause of the Fifth Amendment only applies to federal officials, and [the police officer] is a state official."); *Monche v. Grill*, No. 22-1516, 2022 WL 15523082, at *14 (M.D. Pa. Oct. 27, 2022) (construing plaintiff's Fifth Amendment section 1983 claim against state officials as a Fourteenth Amendment claim).

### a. Substantive Due Process

In Count III, Plaintiffs broadly claim all of Defendants' "acts complained of" in the First Amended Complaint deprived Paone "of certain constitutionally protected rights under the Fourteenth Amendment . . . including, but not limited to the right to privacy." (First Am. Compl. ¶ 76.) To the extent that that Plaintiffs' substantive due process claim is predicated on the John Doe officers' purported use of excessive force when shooting Paone, it is better analyzed as a Fourth Amendment excessive force claim and is barred as duplicative by the more-specific provision rule. *Graham*, 490 U.S. at 395; *Betts*, 621 F.3d at 260; *DeGroat v. Cavallaro*, No. 16-1186, 2017 WL 2152376, at *3 (E.D. Pa. May 17, 2017) (dismissing the decedent-plaintiff's substantive due process claim because the claim that the police officer defendants violated his rights when they shot him was "grounded in the Fourth Amendment"); *see also Berg v. Cnty. of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000) ("[W]hen government behavior is governed by a specific constitutional amendment, due process analysis is inappropriate."); *Reiff v. Marks*, No. 08-5963, 2009 WL 2058589, at *3 (E.D. Pa. July 15, 2009), *aff'd*, 511 F. App'x 220 (3d Cir. 2013) (dismissing substantive due process claim as duplicative of excessive force claim and collecting cases).

To the extent that Plaintiffs' substantive due process claim is based on Defendants' dissemination of false information to the public "with reckless disregard to the Constitutional rights of [Paone] including his right to privacy," it is not barred by the more-specific provision rule. (Pls.' Opp. at 9; First Am. Compl. ¶ 80.) Instead, this claim will be dismissed because Plaintiffs' allegations are not sufficiently specific under *Twombly*. Although Plaintiffs *argue* Defendants violated Paone's "substantive due process right to privacy by disseminating false information about him and the circumstances surrounding his death" (Pls.' Opp. at 9), they do not

*plead* any false statements Defendants made to others with any specificity. (*See* First Am. Compl. ¶¶ 48-51.) Rather, they only generally allege Defendants disseminated information "to news organizations and other public entities" they knew to be false. (*Id.* ¶ 48.) They do not allege the contents of the false statement(s), who made it, to whom it was made, or whether and how this information was communicated to the public at large. *Cf. Harris v. St. Joseph's Univ.*, No. 13-3937, 2014 WL 1910242, at *10 (E.D. Pa. Mar 13, 2014) (discussing Pennsylvania defamation law and dismissing plaintiff's false light defamation claim because he did not allege false information was communicated publicly). This is not sufficient to withstand a motion to dismiss; more is required to nudge their substantive due process claim "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680.

Moreover, at the time of Defendants' alleged publication of false information, Paone was already dead and had no legally protectable privacy or reputational interest.[6] *See* Restatement (Second) of Torts § 560 (1977) ("One who publishes defamatory matter concerning a deceased person is not liable either to the estate of the person or to his descendants or relatives."). Even if he did, the Supreme Court has held that "damage to reputation, unaccompanied by some tangible loss such as termination of employment, does not constitute a loss of liberty or property which is constitutionally protected." *Paul v. Davis*, 424 U.S. 693, 712 (1976); *see also Siegert v. Gilley*, 500 U.S. 226, 233 (1991); *Tobin v. Badamo*, No. 03-783, 2000 WL 1880262, at *4 (M.D. Pa. Dec.

---

[6]     Plaintiffs' reliance on *Merkle v Upper Dublin Sch. Dist.*, 211 F.3d 782 (3d Cir. 2000) is inapposite. (*See* Pls.' Opp. at 8-9). The plaintiff in *Merkle* brought a substantive due process claim on her own behalf after she was fired for exercising her First Amendment rights. The Third Circuit "warned against equating a state defamation claim with a cause of action under section 1983 predicated on the Fourteenth Amendment," but held the plaintiff could "show that her Fourteenth Amendment rights were violated if the harm to her reputation occurred while she was being deprived of another constitutional right." *Id.* at 797 (internal quotations and citations omitted). Here, however, Defendants' alleged false statements were made after Paone died and no longer had a protectable interest in his reputation.

20, 2000) ("[T]he law does not recognize a cause of action for substantive due process based on defamation or harm to reputation."); *Manion v. Sarcione*, 192 F. Supp. 2d 353, 356 (E.D. Pa. 2001) ("The Fourteenth Amendment, of course, only protects against deprivation of life, liberty, and property. It makes no mention of reputation."); *Puchalski v. Sch. Dist. of Springfield*, 161 F. Supp. 2d 395, 406 (E.D. Pa. 2001) ("There is no constitutionally protected property or liberty interest in reputation."). This claim cannot proceed.

### b.  Procedural Due Process

The Township also argues Plaintiffs' procedural due process claim is barred by the more-specific provision rule. Although neither the Supreme Court nor the Third Circuit have squarely held that the more-specific provision rule applies to allegations of deprivation of *procedural* due process, some courts suggest the doctrine may bar both substantive and procedural due process claims when appropriate. *See Gorman v. Warwick Twp.*, No. 10-6760, 2011 WL 1235198, at *5 (E.D. Pa. Apr. 1, 2011) ("[R]egardless of whether the due process claim is substantive or procedural in nature, we agree that an excessive force claim is properly pursued only under the Fourth Amendment."). Others have cabined the rule to only substantive due process claims. *See Deiter v. City of Wilkes-Barre*, No. 16-132, 2021 WL 2020589, at *6 n.5 (M.D. Pa. May 19, 2021) ("Thus, this rule is potentially applicable to claims seeking application of substantive due process analysis, not procedural due process claims.").

To state a claim for a procedural due process violation, Plaintiffs must allege enough facts to show "(1) a deprivation of an individual interest encompassed by the Fourteenth Amendment's protection of life, liberty, or property, and (2) that the procedures available did not provide due process of law." *Culinary Serv. of Del. Valley, Inc. v. Borough of Yardley*, 385 F. App'x 135, 140-41 (3d Cir. 2010) (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006)).

Plaintiffs allege Defendants' actions deprived Paone of liberty and life without due process. (First Am. Compl. ¶ 69; *see also* Pls.' Opp. at 7-8.) They contend they state a procedural due process claim because the John Doe officers' "shoot first process was separate and apart from the excessive force shooting" of Paone, as evidenced by how many bullets missed Paone and struck the buildings behind him. (Pls.' Opp. at 8.)

The more-specific provision rule appropriately bars Plaintiffs' procedural due process claim as it is currently pleaded because it is rooted in the John Doe officers' alleged use of lethal force and clearly based on the alleged violation of Paone's Fourth Amendment right to be free from excessive force. *See Wilson v. City of Cherry Hill*, No. 10-3866, 2011 WL 3651274, at *8 n.12 (D.N.J. Aug. 18, 2011) (acknowledging that although the Supreme Court developed the more-specific provision rule in the substantive due process context, courts dismiss both substantive and procedural due process claims when the gravamen of the allegations is "so clearly premised" on a Fourth Amendment violation and dismissing procedural claim) (citation and internal quotations omitted); *see also Brown v. Cohen*, No. 09-2909, 2011 WL 2110827, at *7 (E.D. Pa. Apr. 21, 2011) ("[W]here a plaintiff seeks relief for the use of excessive force during the course of an arrest, the constitutionality of such actions should be reviewed under the Fourth Amendment and its reasonableness standard, rather than the procedural or substantive due process provision of the Fourteenth Amendment."), *report and recommendation adopted*, 2011 WL 2066727 (E.D. Pa. May 25, 2011); *Smith v. City of Minneapolis*, No. 21-1347, 2021 WL 6011029, at *2 (D. Minn. Dec. 20, 2021) (dismissing the plaintiff's section 1983 procedural due process claim because she failed to support her assertion that she had a liberty interest after being shot by police and holding claim was duplicative of her excessive force claim).[7]

---

[7]     Moreover, the Third Circuit has provided some guidance on section 1983 claims for

### 3.  Leave to Amend Section 1983 Claims

In civil rights cases, "courts must allow amendment, unless doing so would be inequitable

or futile." *McCall v. City of Phila.*, 396 F. Supp. 3d 549, 563-64 (E.D. Pa. 2019) (citing *Fletcher-*

*Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007)); *see also* Fed.

R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). Plaintiffs have

already amended their complaint once as of right in response to the Township's initial Motion to

Dismiss.

If, consistent with this Memorandum and the requirements of *Monell*, Plaintiffs can allege

enough facts to state a basis for the exercise of municipal liability against the Township, they may

amend their excessive force claim against it. Plaintiffs' substantive due process and procedural

---

deprivation of procedural due process. In *Brown v. Muhlenberg Township*, the Third Circuit considered a plaintiff's section 1983 procedural due process claim after township police officers shot and killed the plaintiff's dog. 269 F.3d 205, 213 (3d Cir. 2001). Although the *Brown* court considered deprivation of property and Plaintiffs assert deprivation of life and liberty, the Court still finds it instructive.

   The *Brown* court held that the district court properly granted summary judgment against the plaintiff because he was not entitled to any predeprivation process. *Id.* The court held that under the Due Process Clause, "[u]sually, the process that is constitutionally 'due' must be afforded before the deprivation occurs—the state must provide predeprivation process." *Id.* But "[w]hen the complained of conduct is 'random and unauthorized' (so the state authorities cannot predict when such unsanctioned deprivations will occur), however the 'very nature of the deprivation ma[kes] predeprivation process impossible.'" *Id.* (quoting *Zinermon v. Burch*, 494 U.S. 113, 117 (1990)). Instead, the court held that "postdeprivation process is all that is due," and in *Brown*, this was in the form of a Pennsylvania state conversion claim. *Id.* at 213-14.

   Similarly, John Doe officers' alleged violative conduct was also "random and unauthorized" as to render any predeprivation process impossible. However, Plaintiffs are entitled to postdeprivation remedies in the form of Pennsylvania intentional tort and Fourth Amendment excessive force claims. *See also infra* subsection III.D (discussing the Pennsylvania Tort Claims Act and abrogation of officer immunity for intentional torts).

   In sum, even if the more-specific provision rule did not bar Plaintiffs' procedural due process claim, they cannot state a claim under *Brown* since no predeprivation process was possible and postdeprivation process remains viable.

due process claims rooted in the officers' alleged use of excessive force will be dismissed with prejudice because, even if amended, either would be barred by the more-specific provision rule. Moreover, because amendment of Plaintiffs' substantive due process claim based on damage to Paone's reputation would be futile, this claim also will be dismissed with prejudice.

**B.** **Civil Conspiracy under Section 1985 (Count IV)**

Plaintiffs fail to state a section 1985 conspiracy claim. To state a claim for violation of 42 U.S.C. § 1985(3), the Plaintiffs must allege facts that plausibly show:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (citing *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828-29 (1983)). To show a conspiracy, Plaintiffs' "complaint must allege specific facts suggesting there was a mutual understanding among the conspirators to take actions directed toward an unconstitutional end." *Wilkins ex rel. Wilkins v. City of Phila.*, No. 16-5926, 2017 WL 3263891, at *6 (E.D. Pa. July 31, 2017) (quoting *Aultman v. Padgett*, No. 03-3261, 2003 WL 22358445, at *5 (E.D. Pa. Sept. 10, 2003)) (internal quotations omitted); *see also Handy v. Palmiero*, No. 17-3107, 2018 WL 4680265, at *4 (E.D. Pa. Sept. 28, 2018). They must also allege the conspiracy was "motivated by a racial or class based discriminatory animus . . . ." *Klein v. Donatucci*, 861 F. App'x 503, 508 (3d Cir. 2021) (quoting *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997)) (internal quotations omitted).

Plaintiffs do not plead a conspiracy because they offer no allegation to show any discriminatory motive. They merely aver that "Defendants knew that [Paone] suffered from mental illness, but Defendants conspired amongst themselves to deprive [Paone] of an approach that

would have taken his mental health into consideration and allowed a peaceable ending to this situation." (First Am. Compl. ¶ 83.) The facts in the First Amended Complaint do not give rise to an inference that the Township acted with a discriminatory animus when Paone was shot. Mere knowledge of Paone's mental illness is not enough. Plaintiffs do not include any facts showing the Township acted with an intent to discriminate against Paone because of his mental illness or all of those with mental illnesses. *See Klein*, 861 F. App'x at 508 ("[A] plaintiff must allege, among other things, a conspiracy motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons [of] equal protection of the laws.") (citing *Lake*, 112 F.3d at 682) (internal quotations omitted); *Aultman*, 2003 WL 3263891, at *5 ("Plaintiff must also allege specific facts showing invidious, purposeful, and intentional discrimination."); *Wilkins*, 2017 WL 3263891, at *6 (same).

Because it is not clear that amendment of Plaintiffs' section 1985 conspiracy claim would be inequitable or futile, the Court will dismiss it without prejudice to amendment if Plaintiffs can allege sufficient facts to state a plausible claim for relief.

### C.  <u>Neglect under Section 1986 (Count VII)</u>

Plaintiffs have failed to state a claim under section 1986. Section 1986 provides that:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented;

42 U.S.C. § 1986. "Section 1986 is a companion to [section] 1985(3) and provides the claimant with a cause of action against any person who, knowing that a violation of [section] 1985 is about to be committed and possessing power to prevent its occurrence, fails to take action to frustrate its execution." *Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir. 1980). Since section 1986

violations are preconditioned on a section 1985 violation, "if the claimant does not set forth a cause of action under the latter, its claim under the former necessarily must also fail." *Id.*; *see also Koorn v. Lacey Twp.*, 78 F. App'x 199, 207-08 (3d Cir. 2003); *Rose v. Guanowsky*, No. 21-3280, 2022 WL 910341, at *2 (3d Cir. Mar. 29, 2022). Because the Court dismisses Plaintiffs' section 1985 claim (*see supra* subsection III.B), it will also dismiss its section 1986 claim without prejudice.

### D. State Law Tort Claims (Counts VIII, IX, X, XII, XIII)

The Township argues it is immune from Plaintiffs' state law claims for survival (Count VIII), wrongful death (Count IX), assault and battery (Count X), and negligent and intentional infliction of emotional distress (Counts XII and XIII, respectively) under the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"). (Def.'s Brief at 21-22.) The PSTCA provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."[8] 42 Pa. Cons. Stat. § 8541. Plaintiffs concede the Township is immune from their state law claims to the extent that the conduct underlying their injuries does not fall within one of nine statutory exceptions to the Township's broad immunity under the PSTCA and they stipulate that the Township cannot be held liable for the state tort claims alleged in the First Amended Complaint.[9]

---

[8] Although there is no immunity for claims against individual employees who commit intentional torts like intentional infliction of emotional distress (Count XIII) or assault and battery (Count X), *see* 42 Pa. Con. Stat. § 8550, "[w]illful misconduct . . . does not provide an exception to the local agency's immunity." *M.U. v. Downingtown High Sch. E.*, 103 F. Supp. 3d 612, 630 (E.D. Pa. 2015).

[9] A municipality may be liable for its employees' actions stemming from: (1) the use of motor vehicles; (2) the care, custody, or control of personal property; (3) the care, custody, or control of real property; (4) dangerous conditions of trees, lights, traffic signs, traffic lights, and other traffic controls; (5) dangerous conditions of water, gas, and electricity systems; (6) dangerous conditions of streets and roads; (7) dangerous conditions of sidewalks; (8) the care, custody, and control of municipality-owned animals; and (9) sexual abuse. 42 Pa. Cons. Stat. § 8542(b).

(*See* Pls.' Opp. at 18 ("Plaintiffs stipulate the Defendant John Doe POs *only* can be held liable for the state tort claims contained within the Amended Complaint." (emphasis added). The Court will dismiss Counts VIII, IX, X, XII, and XIII as to the Township.

## IV.   **CONCLUSION**

For the foregoing reasons, Plaintiffs' First Amended Complaint is partially dismissed. Plaintiffs will have the opportunity to amend many of their claims, consistent with this Memorandum.

An Order consistent with this Memorandum will be docketed separately.