IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ESTATE OF MICHAEL TRISTIAN PAONE, deceased, by and through the Administrators of the Estate, MICHAEL PAONE, JR. and LISA PAONE; LISA PAONE, individually; and JULIANA PAONE, individually, : Plaintiffs, : : v. : : PLYMOUTH TOWNSHIP and PLYMOUTH TOWNSHIP POLICE OFFICERS DOES 1-10, : Defendants. | CIVIL ACTION  No. 22-2178 |

## MEMORANDUM

Schiller, J.                                                                                           August 8, 2023

      Plymouth Township police officers shot and killed twenty-two-year-old Michael Tristian Paone. At the time of the shooting, Paone held a toy gun on display and was in the midst of a mental health crisis. His mother, Lisa Paone, and father, Michael Paone, Jr., acting on behalf of his estate, bring this action against Plymouth Township (the "Township"), Township police officers Kyle Lowery and Gerald Desantis, and various John Doe Township police officers ("John Doe officers") who were present during the incident (collectively, "Defendants"). Plaintiffs assert claims under 42 U.S.C. §§ 1983, 1985, 1986, and various state law torts. Paone's mother and his sister, Juliana Paone, also sue Defendants on their own behalf for negligent and intentional infliction of emotional distress.

      The Township previously moved to dismiss all of Plaintiffs' claims against it. The Court granted its motion and allowed Plaintiffs to amend their Complaint, which they did. Defendants now move to dismiss Plaintiffs' claims again. For the reasons that follow, the Court grants Defendants' motion to dismiss in part, denies it in part, and allows Plaintiffs one more chance to

amend the claims dismissed.

## I.     BACKGROUND

Plaintiffs' allegations remain largely unchanged from the first time the Court considered Defendants' motion to dismiss. *See Estate of Paone ex rel. Paone v. Plymouth Twp.*, No. 22-2178, 2022 WL 17419346, at *1-2 (E.D. Pa. Dec. 5, 2022).

Plymouth Township police officers shot and killed then-twenty-two-year-old Michael Tristian Paone on August 3, 2021. (Second Am. Compl., ECF 14, ¶¶ 13, 40, 53.) At that time, he lived with his mother and sister in an apartment at the Plymouth Gardens apartment complex in Conshohocken, Pennsylvania. (*Id.* ¶ 14.) He had a documented history of mental illness and was diagnosed with attention deficit disorder, anxiety disorder, obsessive-compulsive disorder, and bipolar disorder with features of schizophrenia, paranoia, delusions, and grandiosity. (*Id.* ¶ 13.) A few weeks before his death, Paone was involuntarily hospitalized at a nearby Montgomery County hospital for mental health concerns after a violent incident with hospital staff that led them to call the Abington Township Police Department for assistance.[1] (*Id.* ¶ 26.)

At about 10:45 p.m. on the night of the shooting, Paone approached his sister in the apartment complex parking lot as she walked to her car. (*Id.* ¶¶ 15-16.) He was agitated and exhibited symptoms consistent with his mental illness. (*Id.* ¶ 15.) Paone and his sister then returned to the apartment, where he became aggressive with his mother and sister. (*Id.* ¶¶ 17-18.) He stabbed his mother's arms with a small knife, leaving superficial wounds. (*Id.* ¶ 16.) During the altercation, his sister left the apartment and dialed 911 from her cell phone at about 11:11 p.m. (*Id.* ¶ 17.) She went to an adjacent apartment building to make the call and spoke with the emergency

---

[1]     Despite Paone's diagnoses and recent hospitalization, he did not always exhibit symptoms of his illnesses and was able to maintain social relationships with others. (*Id.*¶ 13.)

dispatch for five minutes before inadvertently disconnecting, then calling 911 again for about twelve minutes. (*Id.* ¶ 21.) She told the dispatcher that Paone had a knife and was trying to stab their mother. (*Id.* ¶ 23.) She also mentioned Paone had mental health issues and had recently been treated at an inpatient mental health facility. (*Id.* ¶ 24.) At around 11:14 p.m., the dispatcher asked Paone's sister whether Paone had any weapons. (*Id.* ¶ 25.) She claims to have replied that he possessed a "fake toy gun." (*Id.*) Shortly after his sister's 911 call and before the police arrived, Paone calmed down and stopped his aggressive behavior. (*Id.* ¶¶ 18-20.) He left the family's apartment for the apartment complex's outdoor grounds. (*Id.* ¶¶ 18-19.)

At about 11:15 p.m., Plymouth Township police officers Kyle Lowery, Gerald DeSantis, and John Doe officers 1-10 arrived at the apartment complex and approached Paone outside. (*Id.* ¶ 34.) All of the responding officers lacked proper training and "[were] not able to handle the usual and recurring situations with which they must encounter and make contact with mentally ill individuals," and Lowery was "new to the police force and considered a rookie . . . ." (*Id.* ¶¶ 50, 80.) Lowery had "very little, if any, prior field experience" due to precautions taken by government officials in response to the COVID-19 pandemic. (*Id.* ¶ 50.) Upon arrival, Lowery positioned himself behind a large, enclosed metal dumpster on an incline about fifty feet uphill from Paone. (*Id.* ¶ 35.) DeSantis and at least one other officer were in the parking lot, positioned between parked cars about twenty-five to thirty-five feet from Paone. (*Id.* ¶ 36.) An officer ordered Paone to drop his gun. (*Id.* ¶ 37.) Paone complied and dropped his toy gun. (*Id.* ¶ 38.) After he did, DeSantis and one John Doe officer moved within fifteen to twenty feet from him, shining their flashlights directly at him. (*Id.* ¶ 39.) Confused, Paone appeared to take a step toward the toy gun and began to bend over toward it. (*Id.*) Two to three seconds later, Lowery "abruptly" fired three shots at Paone without any warning, dropping him to the ground. (*Id.* ¶ 40.) Five or six seconds

later, DeSantis fired two more shots at Paone as he laid on the ground. (*Id.* ¶ 40(a).) No more than ten seconds later, at least one other John Doe officer and/or Lowery fired on Paone. (*Id.* ¶ 40(b).) Later, another John Doe officer also shot at him. (*Id.* ¶ 40(c).) In total, Paone sustained eight gunshots—to his chest, legs, arms, and right hand. (*Id.* ¶ 48.)

At about 11:29 p.m., a Plymouth Community Ambulance arrived and Paone was immediately transferred inside the vehicle. (*Id.* ¶ 52.) At about 11:31 p.m., the officers handcuffed Paone and attempted to take him into custody. (*Id.* ¶ 49.) Paone purportedly became unconscious around 11:51 p.m. and was transferred to the emergency room soon thereafter. (*Id.* ¶ 52.) Paone died from his gunshot wounds at 1:34 a.m. on August 4, 2021. (*Id.* ¶ 53.)

## II.    **STANDARD OF REVIEW**

In deciding Defendants' motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded allegations in the Complaint and make all reasonable inferences in favor of Plaintiffs. *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021). A well-pleaded complaint "require[s] only a short and plain statement of the claim showing that the pleader is entitled to relief" and need not contain "detailed factual allegations." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-34 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). To survive Defendants' motion, Plaintiffs must allege enough factual matter, taken as true, to suggest the required elements of his claims and raise a reasonable expectation that discovery will reveal evidence of these elements. *Id.*; *see also Oakwood Lab'ys*, 999 F.3d at 904. In turn, the Court must "draw on its judicial experience and common sense" to find, at minimum, "a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

### III.     DISCUSSION

Plaintiffs bring nine claims, (I) Count I raises Fourth Amendment excessive force claims against all Defendants. Count II asserts a section 1983 municipal liability claim for failure to train against Plymouth Township. The other counts—all against Defendant officers—are as follows: (III) section 1985 conspiracy; (IV) section 1986 neglect; (V) survival;[2] (VI) wrongful death; (VII) assault and battery; (VIII) negligent infliction of emotional distress; and (IX) intentional infliction of emotional distress. Defendants only move to dismiss Counts I, II, III, IV, VIII, and IX.

### A. Claims against the Municipality under Section 1983 (Counts I and II)

Plaintiffs allege the Township violated Paone's Fourth and Fourteenth Amendment rights by shooting and killing him. In Count I of the Second Amended Complaint, Plaintiffs bring an excessive force claim against "All Defendants," which includes Plymouth Township. (*See* Second Am. Compl. ¶ 72.) In Count II, Plaintiffs bring a municipal liability claim against the Township. Defendants argue Plaintiffs have improperly pleaded their municipal liability claim against the Township by including it in Count I because only the officers themselves—not the Township— took alleged actions against Paone and there is no vicarious liability under section 1983. (Defs.' Br. in Supp. of Mot. to Dismiss, ECF 20, at 5-6.) Plaintiffs respond that they are seeking to bring a municipal liability claim against the Township. (Pls.' Resp. to Mot. to Dismiss, ECF 21, at 7.)

The Court construes Plaintiffs' inclusion of the Township in Count I as an attempt to state a municipal liability claim. But since it already brings this type of claim in Count II and the Township cannot be liable on a respondeat superior theory, the Court dismisses the Township <u>only</u> from Count I. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see also City of Canton v. Harris*, 489 U.S. 378, 385 (1989) ("[A] municipality can be found liable under § 1983 only

---

[2]  All state law claims are brought under Pennsylvania law.

where the municipality *itself* causes the constitutional violation at issue.") (emphasis in original); *Gardner v. N.J. State Police*, No. 15-8962, 2016 WL 6138240, at *3 (D.N.J. Oct. 21, 2016) (dismissing excessive force claim against the township as duplicative because plaintiff also brought *Monell* claim against it); *Rosembert v. Borough of E. Lansdowne*, No. 13-2826, 2016 WL 161592, at *7 (E.D. Pa. Jan. 14, 2016) (treating excessive force claim against municipal defendant as a *Monell* claim).

With respect to Count II, to state a section 1983 claim for municipal liability Plaintiffs may allege the Township's policies or customs caused an alleged constitutional violation. *See Monell*, 436 U.S. at 694. Alternatively, they may state a claim for municipal liability by alleging failure to train, supervise, or discipline employees. *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019); *see also Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 1997) ("[I]n the absence of an unconstitutional policy, a municipality's failure to properly train its employees and officers can create an actionable violation of a party's constitutional rights under § 1983.").

Plaintiffs abandoned their *Monell* claim on the theory that the Township had an unconstitutional policy or custom. They now only advance a claim for municipal liability alleging the Township failed to adequately train its officers on how to interact with individuals suffering from mental illness. Plaintiffs have alleged enough facts to support a failure-or-inadequacy claim under section 1983, so the Court denies Defendants' motion to dismiss Count II.

To state a claim against the Township based on its failure to train, supervise, or discipline its officers, Plaintiffs must allege sufficient facts to show that the Township's "failure to train its employees reflects a deliberate or conscious choice." *Estate of Roman*, 914 F.3d at 798 (citing *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)) (internal quotations omitted). "For claims involving police officers, the Supreme Court has held that the failure to train 'serve[s] as

6

[a] basis for [section] 1983 liability only where [it] . . . amounts to a deliberate indifference to the rights of the persons with whom the police come into contact.'" *Id.* (quoting *City of Canton*, 489 U.S. at 388). Plaintiffs must plead deliberate indifference by alleging facts showing the (1) "municipal policymakers kn[ew] that employees will confront a particular situation;" (2) "the situation involve[d] a difficult choice or a history of employees mishandling;" and (3) "the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* (citing *Doe v. Luzerne Cnty.*, 660 F.3d 169, 180 (3d Cir. 2011)).

Moreover, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference" and make out a failure-to-train claim. *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citing *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)); *see also Davis v. City of Phila.*, 284 F. Supp. 3d 744, 756 (E.D. Pa. 2018) (quoting *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014)); *Ewing v. City of Phila.*, No. 20-3170, 2021 WL 6197368, at *7 (E.D. Pa. Dec. 30, 2021). But Plaintiffs also may properly plead a failure-to-train claim if the need for training in particular circumstances is "so obvious" that a failure to do so would amount to deliberate indifference. *Thomas*, 749 F.3d at 223; *Davis,* 284 F. Supp. 3d at 755-56. Under a circumstance like that, a single incident may provide the basis for deliberate indifference when considering the "likelihood the situation will recur and the predictability that an officer lacking specific tools to handle the situation will violate citizens' rights." *Thomas*, 749 F.3d at 223-23; *Davis*, 284 F. Supp. 3d at 756. These circumstances are "rare." *Connick*, 563 U.S. at 64.

Plaintiffs allege the Township violated Paone's constitutional rights by:

- Inadequately training or failing to train officers "despite the well-documented residency of mentally ill people in the Township and the increasing frequency of domestic violence . . . ."

7

- Inadequately training officers on "[h]ow and when to call for the assistance of officers or professionals with specialized training in dealing with mental illness, when possible"

- Inadequately training officers on "[h]ow to approach persons suffering from mental disability or substance impairment;"

- Inadequately training officers on "[h]ow to speak to persons suffering from a mental disability or substance impairment;"

- Inadequately training officers on "how to interact with persons suffering from mental disability or substance impairment (including using appropriate body language and tone of voice);"

- Inadequately training officers on "[h]ow to respect the personal space of persons suffering from mental disability or substance impairment;"

- Inadequately training officers on "[h]ow reasonably to accommodate the disabilities of persons suffering from mental disability or substance impairment;"

- Inadequately training officers on "how to de-escalate, without use of force, incidents involving persons suffering from mental disability or substance impairment;"

- "Failing to teach officers to give a verbal warning when feasible prior to using deadly force;"

- "Failing to teach officers to give commands when feasible prior to using deadly force;"

- "Failing to teach officers to take cover when the officers believe an individual is armed;"

- "Failing to teach officers to address mentally ill individuals appropriately;"

- "Failing to teach officers to identify indeterminate objects;"

- "Failing to teach officers to announce themselves as police and use less than lethal options prior to resorting to the use of deadly force;" and

- "[F]ail[ing] to properly and adequately train its officers to utilize its 'state of the art' Police Communications Center appropriately."

(Second Am. Compl. ¶¶ 74-76, 78.) In further support of these allegations—which the Court accepts as true at this stage—Plaintiffs cite the Plymouth Township Police Department's 2021

8

Annual Report[3] which explains, "[t]he Plymouth Township Police Department has seen a dramatic increase in mental health incidents over the past two years." (*Id.* ¶ 77; *see also id.* ¶ 32.) Plaintiffs also cite Plymouth Township Police Department's 2019 Annual Report[4] to show that "[s]ome of [the Township['s] Officers were trained to be Crisis Intervention Specialists to assist [the] Department in dealing with individuals who may be mentally ill." (*Id.* ¶ 31.) The 2019 Annual Report also explains "[m]any of our supervisors attended leadership and supervision training. Additionally other Officers were trained in the response to active shooters and proper use of force." (*Id.*) By 2021, all officers received training on interacting with individuals suffering mental illness. (*Id.* ¶ 28.)

Plaintiffs do not allege any facts of past incidents concerning these purported deficiencies in support of their failure-or-inadequacy claim. The only incident Plaintiffs include in the Second Amended Complaint is Paone's fatal encounter with the Township officers. *See Davis*, 284 F. Supp. 3d at 756 (holding that a pattern of past violative conduct is typically necessary to make out a failure-to-train claim); *McLaughlin v. Cunningham*, No. 13-1926, 2014 WL 1225935, at *11-12 (E.D. Pa. Mar. 5, 2014) (dismissing the plaintiff's failure-to-train claim because he did not "provide[] any additional factual information concerning the prior excessive-force incidents involving [defendant officer]," even though the existence of these incidents could be reasonably inferred from the complaint).

This is not fatal to Plaintiffs' claim, however, because they do plead enough facts to

---

[3]  The 2021 Annual Report can be found online. *See* John C. Myrsiades, *Plymouth Township Police Department: 2021 Annual Report*, Plymouth Township Police Department (Feb. 10, 2022), https://storymaps.arcgis.com/stories/297f626c564543b3b6fb0a226fc6ca1c.

[4]  The 2019 Annual Report can also be found online. *See Plymouth Township Police Department: 2019 Annual Report*, Plymouth Township Police Department (Mar. 25, 2020), https://storymaps.arcgis.com/stories/db2d7190bca14ce59826a7eb9949c45c/print.

proceed on a single-incident liability theory. They plead that the Township knew officers would encounter individuals suffering from mental illness as shown by the contents of the 2019 and 2021 Annual Reports (the "Reports"). The Reports state that "Plymouth Township Police Department has seen a dramatic increase in mental health incidents over the past two years." (Second Am. Compl. ¶ 77; *see also id.* ¶¶ 27, 81.) As Plaintiffs argue in their response brief, some of the Township officers were trained as crisis intervention specialists *because* of the rising number of interactions with individuals with mental illnesses—further demonstrating the Township and Police Department's knowledge. (Pls.' Resp. to Mot. to Dismiss at 10; *see also* Second Am. Compl. ¶¶ 28, 31.) Moreover, Plaintiffs allege the Township trained all its officers in how to interact with individuals with mental illness at some point in 2021 and discovery "should reveal if the 2021 training was provided before, after, or as a result of" Paone's death. (Resp. to Mot. to Dismiss at 10 n.2; *see also* Second Am. Compl. ¶ 28.) *Cf. Haberle v. Borough of Nazareth*, 936 F.3d 138, 142 (3d Cir. 2019) (holding "facts indicating that the policies were drafted because of an awareness that the pre-existing policies were substantially likely to lead to a violation of citizens' rights" are sufficient to show knowledge). Taking all these allegations as true and drawing all reasonable inferences in Plaintiffs' favor, they have pleaded enough to show the Township policymakers' knowledge.

Plaintiffs also allege sufficient facts to show that the interaction with Paone involved a difficult choice where the wrong decision will frequently cause deprivations of constitutional rights. The Township Police Department has seen a dramatic increase in incidents with individuals with mental illness from 2019-2021, something "relevant to whether [Paone's] injury was a 'highly predictable consequence' of the failure to train on" use of lethal force on and how to interact with individuals with mental illness. *Thomas*, 749 F.3d at 225. Taking the Second Amended

Complaint's allegations as true, it is plausible that police encounters with individuals experiencing mental health crises will recur and result in situations where the wrong decision will result in deprivations of constitutional rights. *See id.* (denying summary judgment after the plaintiff demonstrated prison fights occurred regularly and it was predictale than an officer lacking de-escalation training would violate prisoners' rights); *A.M. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 582 (3d Cir. 2004) (holding that "numerous incident reports" filed by child-care workers demonstrated high predictability of fights between residents with behavioral and mental health problems); *Alexander v. Bucks Cnty.*, No. 21-4633, 2023 WL 3229928, at *8-9 (E.D. Pa. May 2, 2023) (holding the plaintiff stated a single-incident liability claim based on failure-to-train with respect to use of force on mentally ill inmates).

The Township knows to a "moral certainty" that police officers will be required to interact with individuals with mental illness or who are experiencing a mental health crisis. *Bryan Cnty.*, 520 U.S. at 409. The Reports and officer training and certification show the Township Police Department recognizes that individuals with mental illness present different risks to themselves and police officers, making it reasonable to infer that failing to train on when and how to interact with these individuals presents an "obvious risk." *See Alexander*, 2023 WL 3229928, at *9. Its failure to train officers in how to de-escalate these situations could properly be characterized as deliberate indifference to constitutional rights.

At this stage, Plaintiffs plead enough to show deliberate indifference. Whether Plaintiffs can prove Township policymakers ignored an "obvious risk" is something to be decided after discovery. *See Alexander*, 2023 WL 3229928, at *10.

## B. Civil Conspiracy under Section 1985 (Count III)

Plaintiffs also sue DeSantis, Lowery, and John Doe Officers for civil conspiracy under 42

11

U.S.C. § 1985. Defendants move to dismiss the claim arguing Plaintiffs fail to include any facts showing the officers agreed to harm Paone due to some class-based animus. (Defs.' Br. in Supp. of Mot. to Dismiss at 12-15.) The Court agrees and dismisses Count III.

To state a claim for violation of 42 U.S.C. § 1985(3), Plaintiffs must allege facts that plausibly show:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (citing *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828-29 (1983)). To show a conspiracy, Plaintiffs' "complaint must allege specific facts suggesting there was a mutual understanding among the conspirators to take actions directed toward an unconstitutional end." *Wilkins ex rel. Wilkins v. City of Phila.*, No. 16-5926, 2017 WL 3263891, at *6 (E.D. Pa. July 31, 2017) (internal quotations omitted); *see also Handy v. Palmiero*, No. 17-3107, 2018 WL 4680265, at *4 (E.D. Pa. Sept. 28, 2018). They must also allege the conspiracy was "motivated by a racial or class based discriminatory animus . . . ." *Klein v. Donatucci*, 861 F. App'x 503, 508 (3d Cir. 2021) (quoting *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997)) (internal quotations omitted).

Like last time, Plaintiffs do not plead a conspiracy because they offer no allegation to show any discriminatory motive. Plaintiffs aver that "Defendants knew they were responding to a call, domestic in nature and concerning a mental health crisis," "observed [Paone] displaying signs of his mental health" and, therefore, "[D]efendants' knowledge and personal observation of [Paone show] their conduct was necessarily motivated by [Paone]'s state of mental health." (Second Am. Compl. ¶¶ 88, 90, 92.) They also allege that the gun shots fired at Paone after his collapse following

12

the initial shot "evidence[] an intent to act in concert by these defendants to deprive [Paone] of his civil rights." (*Id.* ¶ 93.) Even assuming individuals with mental illness may constitute a protected class for purposes of section 1985, *see Lake*, 112 F.3d at 685-86 & n.5, the claim still fails. The Second Amended Complaint lacks any facts showing the officers acted with an intent to discriminate against Paone or anyone else because of their mental illness. It only shows that officers had knowledge of Paone's mental illness—and knowledge alone is not enough. *See Klein*, 861 F. App'x at 508 ("[A] plaintiff must allege, among other things, a conspiracy 'motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons [of] equal protection of the laws.'") (quoting *Lake*, 112 F.3d at 682); *Aultman v. Padgett*, No. 03-3261, 2003 WL 22358445, at *5 (E.D. Pa. Sept. 10, 2003) ("Plaintiff must also allege specific facts showing invidious, purposeful, and intentional discrimination."); *Wilkins*, 2017 WL 3263891, at *6 (same). Plaintiffs' conclusory statements that Defendants "acted and conspired to deprive [Paone] of his constitutional rights" (Second Am. Compl. ¶ 91) are not enough to "nudge" their claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Moreover, Plaintiffs plead no facts explicitly showing any agreement between the officers, which is ordinarily necessary to state a section 1985 conspiracy claim, nor do they plead sufficient facts for the Court to make such an inference in their favor. *See Perez v. Vega*, No. 18-997, 2019 WL 1045387, at *6 (E.D. Pa. Mar. 5, 2019) (citing *Rosembert v. Borough of E. Landsowne*, 14 F. Supp. 3d 631, 648 (E.D. Pa. 2014)). For these reasons, Plaintiffs' section 1985 claim must be dismissed.

    **C. Neglect under Section 1986 (Count IV)**

Plaintiffs also bring a companion claim against DeSantis, Lowery, and John Doe Officers for neglect under 42 U.S.C. § 1986. Defendants argue that because Plaintiffs' section 1985 must be dismissed, so too must the section 1986 claim. (Defs.' Br. in Supp. of Mot. to Dismiss at 15-16.) Plaintiffs disagree. (Pls.' Resp. to Mot. to Dismiss at 14-15.) The Court again agrees with Defendants and finds Plaintiffs fail to state a claim under section 1986.

Section 1986 provides that:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented;

42 U.S.C. § 1986. It "is a companion to [section] 1985(3) and provides the claimant with a cause of action against any person who, knowing that a violation of [section] 1985 is about to be committed and possessing power to prevent its occurrence, fails to take action to frustrate its execution." *Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir. 1980). Since section 1986 violations are preconditioned on a section 1985 violation, "if the claimant does not set forth a cause of action under the latter, its claim under the former necessarily must also fail." *Id.*; *see also Koorn v. Lacey Twp.*, 78 F. App'x 199, 207-08 (3d Cir. 2003); *Rose v. Guanowsky*, No. 21-3280, 2022 WL 910341, at *2 (3d Cir. Mar. 29, 2022). Because the Court dismisses Plaintiffs' section 1985 claim (*see supra* subsection III.B), it also dismisses their section 1986 claim.

### D. Leave to Amend Section 1985 and 1986 Claims

In civil rights cases, "courts must allow amendment, unless doing so would be inequitable or futile." *McCall v. City of Phila.*, 396 F. Supp. 3d 549, 563-64 (E.D. Pa. 2019) (citing *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007)); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). Even though

Plaintiffs have not requested leave to amend, the Court must consider whether it is appropriate in civil rights cases *sua sponte* unless amendment would be inequitable or futile. *Fletcher-Harlee Corp.*, 482 F.3d at 252-53.

Plaintiffs already amended their Complaint once as a matter of course. (*See* ECF 8.) The Court then granted them leave to amend most of their claims after deciding Defendants' last motion to dismiss. *See Estate of Paone*, 2022 WL 17419346, at *10. Because it is not clear that amendment of the section 1985 and 1986 claims would be futile and because one more chance to amend would not be inequitable given the circumstances of this case, the Court provides Plaintiffs just one more chance—their fourth—to amend their section 1985 and 1986 claims. Any amendment *must* include facts showing DeSantis, Lowery, and/or other John Doe Officers at the scene *agreed* to harm Paone *because* he was an individual suffering from mental illness.

### E. State Law Tort Claims for Negligent and Intentional Infliction of Emotional Distress (Counts VIII & IX)

Plaintiffs Lisa and Juliana Paone individually bring state tort claims for negligent and intentional infliction of emotional distress. Defendants move to dismiss these claims against Defendants DeSantis, Lowery, and the John Doe Officers. Defendants only argue Plaintiffs fail to state a claim because they do not allege they suffered adequate physical harm. (Defs.' Br. in Supp. of Mot. to Dismiss, at 17-18; Defs.' Reply Br. in Supp. of Mot. to Dismiss, ECF 22, at 6-7.) Plaintiffs argue they have. (Pls.' Resp. to Mot. to Dismiss at 15-16.) The Court denies Defendants' motion to dismiss these claims.

To state a claim for negligent infliction of emotional distress, Plaintiffs must plead one of four factual scenarios—including observing a tortious injury to a close relative. *Pellegrino v. U.S. Traps. Sec. Admin.*, 896 F.3d 207, 230-31 & n.33 (3d Cir. 2018), *rev'd en banc on other grounds*, 937 F.3d 164 (3d Cir. 2019); *Goodson v. Kardashian*, 413 F. App'x 417, 418 (3d Cir. 2011). To

state a claim for intentional infliction of emotional distress, Plaintiffs must plead "intentional outrageous or extreme conduct by the [D]efendant[s], which causes severe emotional distress to the [P]laintiff[s]." *Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010). For both claims, Plaintiffs must allege facts showing they suffered physical harm. *See Kovalev v. Lidl US LLC*, No. 21-3300, 2022 WL 17858055, at *16 (E.D. Pa. Dec. 21, 2022) (publication forthcoming) (discussing negligent infliction of emotional distress claim's physical harm requirement); *Reedy*, 615 F.3d at 231 (discussing intentional infliction of emotional distress claim's "resulting physical harm" requirement) (internal quotations omitted). They may do so by alleging physical manifestations of emotional suffering, including "nausea, headaches, insomnia, depression, nightmares, flashbacks, repeated hysterical attacks, stress, and anxiety." *Kovalev*, 2022 WL 17858055, at *17 (quoting *Toney v. Chester Cnty. Hosp.*, 36 A.3d 83, 85, 100 (Pa. 2011)) (internal quotations omitted); *see also Bernstein v. Serv. Corp. Int'l*, No. 17-4960, 2018 WL 6413316, at *5 (E.D. Pa. Dec. 6, 2018); *Runner v. C.R. Bard*, 108 F. Supp. 3d 261, 271 (E.D. Pa. 2015).

Here, Plaintiffs allege that both Lisa and Juliana Paone—Michael's mother and sister, respectively—were present at the scene and witnessed Michael's death. (Second Am. Compl. ¶¶ 124-126.) As a result, Paone's mother suffered "severe emotional distress," including "anguish, fright, horror, nervousness, grief, anxiety, depression, worry, shock, humiliation, guilt, sleep disturbance, nightmares, shame" and required psychiatric treatment. (*Id.* ¶ 126.) His sister suffered "severe emotional distress" too, including the same symptoms as her mother that also required psychiatric treatment. (*Id.* ¶ 127.) Taken as true, these allegations are sufficient, if only just so, to show the physical harm required to withstand dismissal for both claims. *See Kovalev*, 2022 WL 17858055, at *17-18 (holding that allegations of "mental anguish and emotional distress," feeling "terrified," and being "unable to sleep" were sufficient to state a negligent infliction of emotional

distress claim); *Bernstein*, 2018 WL 6413316, at *5 (collecting and discussing Pennsylvania appellate cases holding "shock, rage, grief, humiliation, trauma, depression, anxiety, continued nausea and headaches, insomnia, nightmares, [and] flashbacks" are sufficient to state a claim for emotional distress); *Runner*, 108 F. Supp. 3d at 273. Therefore, Defendants' motion is denied with respect to Counts VIII and IX.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is denied in part and granted in part.

An Order consistent with this Memorandum will be docketed separately.